**JOSTENS LEARNING CORP.,**
**Appellant–Defendant,**

v.

**EDUCATION SYSTEM CORP. OF INDIANA, d/b/a Integrated Tele–Link, Appellee–Plaintiff.**

**No. 49A05–9410–CV–420.**

Court of Appeals of Indiana.

June 20, 1995.

Transfer Denied Nov. 8, 1995.

Phillip A. Terry, Steven D. Hardin, McHale, Cook & Welch, P.C., Indianapolis, for appellant.

James R. Fisher, J. Scott Fanzini, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

### OPINION

BARTEAU, Judge.

Jostens Learning Corp. ("Jostens") appeals the trial court's denial of its Ind. Trial Rule 60(B) motion for relief from default judgment, raising the issue whether the trial court abused its discretion. We affirm.

### FACTS

Education System Corp. of Indiana, d/b/a Integrated Tele–Link, contracted with Jostens Learning Corp. to sell educational computer software to school districts in Indiana, Illinois and Kentucky. On July 9, 1992, Jostens terminated the contract, the termination to be effective August 10, 1992 by the terms of the contract. ESC was entitled to receive commissions for all orders or contracts it solicited prior to August 10, 1992, and accepted by Jostens by November 10, 1992. After the contract was terminated, disputes arose as to what commissions were owed to ESC. Negotiations ensued between ESC and Jostens without reaching a satisfactory result.

On January 28, 1993, ESC filed the underlying lawsuit against Jostens to recover the commissions it alleged were owed by Jostens. Upon service of the complaint, Jostens's in-house Senior Corporate Attorney and Litigation Manager, Mary Bope, contacted ESC's attorney and asked for permission to hold off hiring Indiana counsel to enter an appearance and respond to the complaint. ESC's attorney agreed with the understanding that each lawyer would be "talking with [their] clients in the near future to discuss various grievances between the two of them and to see whether or not an early and amicable resolution of this matter may be reached." R. 16. Both parties also requested informa-

tion from each other in order to pursue settlement negotiations. Jostens requested documentation that ESC had solicited certain sales prior to August 10, 1992, and ESC requested information regarding contracts that had been accepted by Jostens within ESC's former territory since ESC's termination.

Bope came to Indianapolis on March 15, 1993, and reviewed ESC's file in ESC's attorney's office. She also met with Richard White and Sharon Knoll, the two people behind ESC, and questioned them about the basis for their claims to commissions. Bope told ESC's attorney at that time that she would obtain the requested information from Jostens concerning sales closings and would provide the information to ESC's attorney. Two sales in particular, Kokomo and Duneland, were the focus of a dispute between the parties. ESC claimed it had solicited those sales before August 10, 1992 and was entitled to the commissions because Jostens purposely delayed the closings past November 10, 1992. Jostens claimed that ESC was not entitled to commissions for those sales. The next contact between the parties came on May 19, 1993, when Bope sent a letter to ESC's counsel containing some, but not all of the requested information. The letter sent by Bope expressed Jostens's desire for an "expeditious resolution" and contained the following paragraph:

> Exhibit three is the commissions worksheet, third revision, along with supporting documentation. Note that the bottom of page four indicates the amount owed to your clients, after all fiscal year 1992 is finalized, totaling $65,123.50. This figure includes the Goshen lease documents which was [sic] referenced in our meeting earlier and which have been finalized since that time.

R. 38. The letter also reiterated Jostens's belief that ESC was not entitled to commissions for the Kokomo and Duneland sales and ended with the following paragraphs:

> I believe that this letter encompasses all the issues and concerns addressed by your clients at our meeting with the exception of the Tapestry commissions. It appears that we need further clarification of your

clients' claims with regard to any additional commissions owed with regard to Tapestry. We will certainly be willing to look into that issue once we have a clearer understanding of the dispute.

Once you have had an opportunity to review the enclosed materials with your clients, please contact me about payout of all commissions due and owing to your clients including resolution of this matter and acceptable release language. Thank you.

R. 38.

On August 2, 1993, ESC's counsel responded by letter, the final paragraph of which stated:

I would like to make a resolution of this case, but we will need to do so quickly. You have our permission to hold up hiring an attorney in Indianapolis to enter an appearance in the lawsuit that has been filed while we continue to attempt to negotiate a settlement, but only on the condition that we receive immediate payment of all commission amounts that Jostens acknowledges owing at this time, without requiring such payment to be accepted as compromise or settlement or release of my clients' claims with respect to those commission amounts that are in dispute.

R. 98.

Jostens did not respond to this letter or otherwise contact ESC or ESC's counsel, did not send payment to ESC, and did not enter an appearance or file an answer. On October 28, 1993, ESC filed its motion for default judgment. ESC did not notify Jostens that it was seeking default judgment. The trial court granted the motion for default judgment and set the matter for a hearing on damages. Jostens was not notified of the default judgment or damages hearing. When Jostens failed to appear at the damages hearing, the trial court continued the hearing and ordered that Jostens be given notice of it. Jostens discovered the default judgment when counsel called ESC's counsel to inquire about the notice of a damages hearing. Jostens promptly obtained Indiana counsel and moved for relief from the default judgment.

## DISCUSSION

Jostens argues that the trial court abused its discretion in denying relief from the default judgment. The decision whether to set aside a default judgment is given substantial deference on appeal. Appellate review of the refusal to set aside a default judgment is limited to determining whether there has been an abuse of discretion. *La-Palme v. Romero* (1993), Ind., 621 N.E.2d 1102, 1104, *reh'g denied.* Upon a motion for relief from the default judgment, the burden is on the movant to show sufficient grounds for relief under T.R. 60(B). A denial of the motion is presumptively valid and the movant must demonstrate that the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.; Precision Erecting, Inc. v. Wokurka* (1994), Ind.App., 638 N.E.2d 472, 474, *trans. denied.*

Jostens sought relief in the trial court under T.R. 60(B)(1), (3), and (8); however, on appeal its argument is limited to relief under T.R. 60(B)(1), which provides relief from default judgment on the grounds of mistake, surprise or excusable neglect. Relying upon *Condon v. Patel* (1984), Ind.App., 459 N.E.2d 1205, Jostens argues that its failure to enter an appearance or file a response to the complaint was the result of excusable neglect because ESC had agreed to an indefinite extension of time to enter an appearance and respond. In *Condon,* plaintiff's attorney gave defendants's insurance company an indefinite extension of time to appear and respond in order to pursue a settlement. For four or five months the insurance company attempted to contact plaintiff's attorney, seeking information regarding special damages so that a settlement offer could be made. Plaintiff's attorney did not respond, but the attorney's secretary told the insurance company that it would be a few weeks before the attorney would get to the case. Three weeks later, without any communication from plaintiff's attorney, the motion for default judgment was filed. These facts supported excusable neglect because the indefinite extension was never revoked before plaintiff obtained the default judgment. *Id.*

Here, however, ESC did modify the indefinite extension given to Jostens. Contrary to Jostens's argument, the August 2, 1993 letter from ESC's counsel made it clear that Jostens could continue to refrain from entering an appearance only if Jostens immediately paid to ESC the amounts in commissions that Jostens agreed were owed. The trial court did not have to accept Jostens's argument that it found the letter confusing, and indeed, we are hard pressed to see what Jostens found confusing about that demand. Jostens chose to ignore the demand and did not enter an appearance or pay the undisputed commissions. Although Jostens later claimed that no amount was owed due to set-offs, and thus no payment was necessary to preserve the extension of time, it had never advised ESC of counterclaims that set off the amount of commissions it owed. As far as ESC knew at the time of the August 2 letter, Jostens agreed that some amount of commissions was owing to ESC.

■ This is similar to *Sidenstricker v. Dobbs* (1982), 110 Ill.App.3d 620, 66 Ill.Dec. 363, 442 N.E.2d 924, wherein the court held that there was no excusable neglect when the defendant did not answer the complaint by August 1, 1979, after the plaintiff had sent a letter granting an extension until August 1 to pursue a settlement. Although the letter sent by ESC did not state a specific date by when payment had to be made or an appearance filed, ESC's demand for "immediate" payment certainly did not mean Jostens still had months to do something in response. The trial court was well within its discretion to determine that Jostens did not reasonably ignore the revocation of the extension of time and it was reasonable to put the burden on Jostens to inquire about the extension if it was confused by the letter.

Jostens makes much of the fact that the motion for default judgment was filed without any notice given to Jostens, even though negotiations had been ongoing, citing two out-of-state cases in support. In *Gulf Stream Boat Builders, Inc. v. South Dade Boat, Inc.* (1991), Fla.App., 583 So.2d 807, the court, in a one paragraph opinion, held it was unconscionable for the plaintiff to obtain a default judgment without notice to the defendant when the plaintiff led the defendant to believe it was unnecessary to respond to the complaint because of ongoing settlement negotiations. In *Helgesen v. Inyangumia* (1981), Utah, 636 P.2d 1079, the court similarly held that when parties had been in contact concerning settlement before the lawsuit was filed, the defendant was excused from making a timely response to the complaint and the plaintiff was not entitled to the default judgment it obtained one week after the time for responding had passed, since plaintiff's attorney knew the defendant would defend the claim. The Utah Supreme Court held that plaintiff should have contacted the defendant's insurance adjuster to inquire why an answer had not been filed before seeking the default judgment. *Id.*

■ These cases do not help Jostens, however, because the Indiana Supreme Court has rejected this theory of "constructive appearance" that requires prior notice of a default judgment to a party who has not formally entered an appearance, but has been in contact with the plaintiff's attorney concerning the case. *LaPalme*, 621 N.E.2d 1102 (adopting in relevant part the Court of Appeals's opinion found at 606 N.E.2d 882). Therefore, Jostens was not entitled to notice of the motion for default judgment. If Jostens had entered its appearance as requested by ESC's letter, Jostens would have been entitled to notice under T.R. 55(B). Having ignored ESC's revocation of the extension of time to enter an appearance, Jostens cannot now complain that it was entitled to notice of the motion for default judgment.

The trial court did not abuse its discretion in determining that Jostens's failure to appear or answer the complaint was not the result of excusable neglect. Because Jostens fails to show excusable neglect, we need not address its argument that meritorious defenses exist.

AFFIRMED.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.