**Diana L. McDERMITT, Appellant–Plaintiff,**

v.

**Cynthia LOGAN and Walter Logan, Appellees–Defendants.**

No. 79A02–9705–CV–305.

Court of Appeals of Indiana.

July 30, 1998.

Charles R. Vaughan, Robert W. Vaughan, Vaughan and Vaughan, Lafayette, for Appellant–Plaintiff.

Danford R. Due, Stewart Due Miller & Pugh, Indianapolis, for Cynthia Logan.

Laura S. Reed, R. Troy Mulder, Riley Bennett & Egloff, Indianapolis, for Walter Logan.

Stephen R. Pennell, Russell H. Hart, William P. Kealey, Stuart & Branigin, Lafayette, for Appellees–Defendants.

## OPINION

STATON, Judge.

Diana L. McDermitt appeals the trial court's decision to set aside a nine million dollar ($9,000,000.00) default judgment entered jointly and severally against Cynthia and Walter Logan. The sole issue presented for our review is whether the trial court abused its discretion when it granted the

Logans' separate motions to set aside the judgment.

We affirm.[1]

The relevant facts forming the basis of the original action are scarce. Walter Logan, although still married to Cynthia Logan, was "sleeping with" McDermitt. On December 2, 1995, Cynthia repeatedly telephoned McDermitt's residence, then appeared there armed with a rifle. Cynthia allegedly was in McDermitt's driveway "crashing cars and firing a rifle." Walter confronted Cynthia. At some point the rifle discharged and a bullet missed Walter but struck McDermitt in her neck, causing paralysis.

On February 15, 1996, McDermitt filed her original complaint against both Cynthia and Walter. In Count I, McDermitt alleged that Cynthia intentionally shot McDermitt. In Count II McDermitt claimed Cynthia acted negligently, recklessly and carelessly. McDermitt averred in Count III that Walter Logan negligently caused McDermitt's injuries by placing himself in close proximity to McDermitt.

On April 1, 1996, Laura Bowker, who had received McDermitt's complaint from the Logans' insurer, contacted McDermitt's counsel, Phillip Smith, by telephone. Bowker requested extra time to resolve questions concerning Cynthia's coverage and to prepare and file appropriate documents. Bowker testified Smith told her, "[D]on't worry Laura, I[w]on't default you."

On April 3, 1996, McDermitt filed an amended complaint deleting the allegation that Cynthia's actions were intentional, and Smith gave Bowker a copy of the amended complaint. In an April 11, 1996 letter to Bowker, Smith urged her to enter her appearance for both Logans. The following day, McDermitt filed a demand for a jury trial and, again, Smith gave Bowker a copy of the filing.

Bowker had still not entered an appearance for the Logans by April 18, 1996 when, without notice to Bowker, McDermitt filed a premature motion for default judgment which the trial court granted. Confused,

1.  McDermitt's petition for oral argument is herein denied.

Walter personally came to the court house on April 24th in anticipation of a hearing on damages.[2] Smith and McDermitt were present and Smith spoke at length with Walter. Specifically, he told Walter that "Bowker had requested more time to respond to [McDermitt's] complaint" and that the hearing had been postponed "to give Bowker proper time to respond." Smith also assured Walter that any judgment would not be enforced against him.

On April 29, 1996, the first business day after the statutory deadline for the Logans' response, McDermitt filed and the trial court granted an amended motion for default judgment. In addition, the court vacated the prematurely entered default judgment. Again, no notice was sent to Bowker. On May 1, 1996, the trial court set damages at nine million dollars ($9,000,000.00) and found the Logans "jointly and severally" liable.[3]

Bowker called McDermitt's counsel that same day and learned of the default judgment. Two days later, Bowker appeared for Walter and petitioned the court for relief from judgment. Bowker and another attorney then entered their appearances for Cynthia who also petitioned for relief from judgment. Following discovery and a hearing, the trial court entered requested findings of fact and conclusions of law along with its order setting aside the default judgment. The court denied McDermitt's subsequent motion to correct error, and McDermitt now appeals.

■ The decision whether to grant or deny a motion for relief from default judgment lies within the equitable discretion of the trial court. *Whelchel v. Community Hospitals of Ind., Inc.*, 629 N.E.2d 900, 902 (Ind.Ct.App.1994), *reh. denied, trans. denied.* In deciding whether to set aside a default judgment, the trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits, especially in cases involving mate-

rial issues of fact, substantial sums of money or weighty policy determinations. *Teegardin v. Maver's, Inc.*, 622 N.E.2d 530, 533 (Ind.Ct. App.1993). The party seeking to set aside a default judgment has the burden of establishing the grounds for relief and the existence of a meritorious defense to the judgment. *Langdon v. Langdon*, 641 N.E.2d 673, 674 (Ind.Ct.App.1994).

■ In this instance the trial court entered findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). On review, we do not set aside the trial court's findings or judgment unless clearly erroneous. T.R. 52(A). A finding of fact is clearly erroneous when there is no evidence or inferences reasonably drawn therefrom to support it. *Shively v. Shively*, 680 N.E.2d 877, 882 (Ind.Ct.App.1997). The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* In making our determination, we neither reweigh evidence nor substitute our judgment for that of the trial court. *Pro–Lam, Inc. v. B & R Enterprises*, 651 N.E.2d 1153, 1157 (Ind.Ct.App.1995). We may affirm the judgment on any legal theory supported by the findings if that theory is consistent with "all of the trial court's findings of fact and the inferences reasonably drawn from the findings." *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind.1998).

■ Here, the trial court set aside the default judgment on several grounds enumerated in Indiana Trial Rule 60(B) which states in part:

On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

(1) mistake, surprise, or excusable neglect;
*****

---

2. In his affidavit, Walter gave April 29, 1996 as the relevant date, Record at 1017, and the parties sometimes refer to April 29th. *See, e.g.,* Appellant's Reply Brief at 11. However, in Walter's deposition, he states that he visited the court house on April 24th. Record at 743.

3. At some point after entry of the default judgment, the Logans assigned all of their rights against their insurance carrier to McDermitt in exchange for a covenant not to execute McDermitt's judgment against them.

(3) fraud ... misrepresentation, or other misconduct of an adverse party[.]

McDermitt alleges there is no evidentiary basis for the court's determinations.[4] We first consider the court's conclusion that Bowker's failure to file a timely answer was excusable because Bowker understood "she had an agreement with Smith that he would not move for a default judgment."

McDermitt insists there is no evidence of an agreement apart from Bowker's wholly subjective perception. McDermitt cites *Wagoner v. Wagoner,* 147 Ind.App. 696, 263 N.E.2d 657 (1970), in which this court reasoned that a "purely subjective understanding" without showing an "objective reason for entertaining it" cannot constitute excusable neglect. *Id.* at 702, 263 N.E.2d at 660. *Wagoner* is unavailing.

Bowker testified Smith assured her he would not seek a default judgment. McDermitt vehemently contested Bowker's claim, but the trial court heard the evidence and decided the issue in favor of Bowker. We will not reweigh the conflicting evidence. Further, Bowker's state of mind must be evaluated in the context of the local custom wherein counsel seeking a default judgment contacts opposing counsel before filing the request. The record shows that objective reasons existed for Bowker's belief.

McDermitt next argues that, even if there were such an agreement, it was "nullified" by Smith's April 11th letter urging Bowker to enter an appearance for the Logans. Repeatedly, McDermitt identifies her case as "completely analogous" to that of *Jostens Learning Corp. v. Education Sys. Corp.,* 651 N.E.2d 1186 (Ind.Ct.App.1995), *trans. denied.* In *Jostens,* the defendant asked for permission to delay hiring Indiana counsel to enter an appearance. Initially, the plaintiff agreed. Approximately six months later, plaintiff's counsel wrote to the defendant agreeing to further delay on the "condition" that the plaintiff receive "immediate pay-

ment" of certain commissions. *Id.* at 1188. The defendant did not respond and, almost three months later, the plaintiff filed its motion for default judgment which the trial court granted. The defendant then filed a motion to set aside the judgment on the ground of excusable neglect. The trial court denied the motion, and we affirmed that decision. *Id.* at 1189.

There are distinguishing features between *Jostens* and the case at bar. Significantly, in *Jostens* the trial court in its discretion denied the defendant's motion to set aside the judgment while, here, the court granted the motion. We give the trial court's decision great deference on appeal. Thus, in *Jostens,* we merely held that the trial court did not abuse its discretion in denying the motion to set aside the default judgment. There is another important difference in these cases. The communication at issue here did not expressly qualify the prior agreement. Further, on April 12th Smith gave Bowker a copy of the jury trial request, leading Bowker to rely upon Smith's informing her of any change in the agreement. In light of the foregoing, despite Smith's April 11th letter, Bowker could reasonably have assumed the agreement not to seek a default judgment was still in effect.

In sum, the evidence supports the finding of an agreement which supports the conclusion there was excusable neglect in failing to timely answer the complaint. The trial court did not abuse its discretion in this regard. Because of our disposition of this issue, we need not consider whether the evidence supports other grounds for setting aside the default judgment.

■ Next, McDermitt insists that neither party has made a proper showing of a meritorious defense. Case law requires the defaulted party to present "[s]ome admissible evidence" to show the party would suffer an injustice if the judgment is allowed to stand. *In re Marriage of Holley,* 659 N.E.2d 581,

---

4. McDermitt makes a host of other arguments. She insists the Logans' counsel had unclean hands; there were discovery and evidentiary errors; the court impermissibly considered the amount of the damages awarded; and the court erred in the "manner" in which it set aside the default judgment, that is, in substantially accepting the Logans' proposed findings and conclusions. We find no merit to these arguments or the other assignments of error, many of which are more appropriately raised in another forum.

584 (Ind.Ct.App.1995), *trans. denied.* With respect to Walter, the trial court listed three such defenses: that Walter had no duty to McDermitt; that Walter's conduct did not cause McDermitt's injuries; and that, under Indiana's comparative fault act, Walter would not be responsible jointly and severally for the nine million dollars ($9,000,000.00.) [5] Walter's affidavit indicates he felt he was not at "fault" and McDermitt herself testified the incident was not Walter's fault. As we recently recognized, fault involves duty, breach of duty and causation. *Hagerman Constr. Co. v. Copeland,* 697 N.E.2d 948, 960 (Ind.Ct. App.1998). The finding of a meritorious defense is not clearly erroneous.

In regard to Cynthia, the trial court concluded: "There is an open question in the case as to how the gun that shot McDermitt discharged.... Therefore, a jury could well find the gun's discharge to be accidental and non-negligent." Smith testified the shot "could have been an accidental discharge at the time of the struggle[.]" Thus, the court's conclusion has some evidentiary support, albeit slight.[6]

■ The trial court also noted that Cynthia was facing criminal charges in connection with McDermitt's injury and had therefore invoked her Fifth Amendment right against self-incrimination.[7] The court then gave this constitutional right priority over the common law meritorious defense doctrine. McDermitt cites *Gash v. Kohm,* 476 N.E.2d 910 (Ind.Ct.App.1985), *reh. denied, trans. denied,* for the proposition that assertion of the privilege does not prohibit the trier of fact in a civil case from drawing adverse inferences from the refusal to testify. Any inference permitted under *Kohm,* standing alone, cannot resolve the question presented in this equitable procedure. Cynthia is protected from answering any questions where those answers could be used against her in a subsequent criminal proceeding. *See State v. Cass,* 635 N.E.2d 225, 226–27 (Ind.Ct.App.1994) (citing U.S. CONST. amend. V), *trans. denied.*

Here, the trial court was asked to balance the court's interest in judicial efficiency and Cynthia's constitutional right against self-incrimination. In doing so, the court in its equitable discretion decided Cynthia should not suffer a multi-million dollar default judgment for exercising her constitutional right. We cannot say the court's decision was clearly erroneous.

Affirmed.

HOFFMAN and RUCKER, JJ., concur.

---

5. In regard to the elements of negligence, McDermitt claims that the trial court's conclusions of law show that the court impermissibly placed the burden on her to establish the negligence claim rather than on Walter to establish his meritorious defense. Having reviewed the challenged conclusions, we find no impermissible burden-shifting.

6. McDermitt argues that Smith's testimony would not be admissible at trial because he was not an eyewitness to the incident. Smith's statement was admitted without objection at the hearing. McDermitt cannot now argue it has no legal effect.

7. Neither party discloses the source of this finding. However, Cynthia asserts the right in her answer filed after the court set aside the default judgment.