**NORTHWESTERN NATIONAL INSURANCE COMPANY, Appellant–Defendant,**

v.

**Gregory MAPPS and Robin Mapps, Appellees–Plaintiffs.**

No. 02A03–9810–CV–426.

Court of Appeals of Indiana.

Oct. 19, 1999.

Phillip A. Renz, Tina M. Yordy, Miller Carson Boxberger & Murphy, LLP, Fort Wayne, Indiana, Attorneys for Appellant.

Jack E. Roebel, Fort Wayne, Indiana, Leslie A. Behrman, Stewart Due Doyle & Pugh, LLP, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge

Appellant, Northwestern National Insurance Company (Northwestern), appeals the trial court's order, denying its Motion to Set Aside Default Judgment. In particular, Northwestern contends that it did not receive proper service of the summons and complaint and its failure to file an answer was due to excusable neglect.

We affirm.

In 1988, Gregory and Robin Mapps (Mapps) hired E.W. Builders to construct an addition on their home in Columbia City, Indiana. At the time the construction was performed, E.W. Builders was allegedly insured by Northwestern. In 1994, the Mapps experienced a structural collapse to their home. As a result, the Mapps sought compensation from Northwestern, West American Insurance, with whom the Mapps had a home owners' insurance policy at the time of the construction, and Ohio Casualty Insurance Company, with whom the Mapps had insurance at the time of the loss. Each insurance company, however, denied coverage of the claim.

Consequently, on January 15, 1997, the Mapps filed a Complaint for Declaration of Rights and Benefits Under Insurance Policies. Thereafter, the Mapps attempted service of the summons and complaint on each insurance company by way of certified mail, return receipt requested.

In February or March of 1997, Ken Kozek, the regional claims manager for Northwestern, received a fax transmission of the summons at the Columbus, Ohio office. Kozek created a file and assigned it to Judy Tardell, a senior claim representative for Northwestern with approximately twenty (20) years experience. Kozek then contacted the Mapps' attorney[1] who indicated that although it was not necessary that Northwestern file an answer "the next day," he would be expecting a response. Record at 178. Thereafter, Kozek no longer had any contact with the Mapps, believing that steps had been taken to protect Northwestern's interests.

After several weeks had passed and no answer had been filed by Northwestern, the Mapps' attorney checked the court's file to ensure that proper service had been made. Although the court's file revealed, through return receipts, that Ohio Casualty Insurance and West American Insurance Companies had received service on January 17, and 21, 1997, respectively, no return receipt could be located for Northwestern. Consequently, on August 1, 1997, the Mapps' attorney filed an alias summons and complaint by directing service to the "Highest Available Officer" at the Columbus, Ohio office. Record at 145. The return receipt was delivered on August 6, 1997, and signed for by an employee of Northwestern.

Soon thereafter, the Mapps' attorney received a phone call from Judy Tardell, to whom the file had originally been assigned. The next day Tardell sent the Mapps' at-

---

1. It is not entirely clear when Kozek contacted the Mapps' attorney. According to the Mapps' attorney, Kozek first contacted him sometime in February of 1997, allegedly the day before an answer was due. However, according to Kozek, he first received a copy of the summons in March of 1997. See Kozek's affidavit filed in support of the Motion to Set Aside Default Judgment. (R. 109). Further, Northwestern makes this assertion in its appellate brief. See Appellant's Brief at 3 ("In March of 1997, Ken Kozek ... received a faxed transmission of a Summons naming Northwestern in a suit filed by the Mapps.").

torney a fax referencing the prior phone call and seeking any additional information which would identify E.W. Builders as an insured of Northwestern. The fax also included a copy of the alias summons and complaint.

On August 13, 1997, the Mapps' attorney sent Tardell a written response, providing the name of E.W. Builder's owner and indicating that he would continue his efforts to determine the owner's address. Although the Mapps' attorney subsequently attempted to contact Tardell by phone on at least two other occasions, the Mapps eventually lost contact with Tardell.

Sometime after August of 1997, Tardell was terminated from Northwestern and the Columbus office was closed. Consequently, all documents and records concerning any files were sent to Northwestern's home office in Lawrenceville, New Jersey. Although the Columbus office was later reopened, no file existed with regard to the Mapps' prior claim.

Approximately seven months later, on February 17, 1998, the Mapps filed a Motion for Default Judgment. In their motion, the Mapps contended that there was a reasonable probability that Northwestern had received service of the summons and complaint but had failed to appear and answer the complaint. The Mapps then requested that the trial court enter default judgment in their favor, establishing that Northwestern had insured E.W. Builders, that E.W. Builders negligently constructed the 1988 addition and caused structural damage, that Northwestern's policy was in full force and effect and that the Mapps were entitled to full benefits payable under the policy.

The record contains a Notice of Hearing signed by the judge advising Northwestern of a hearing date on the Motion for Default Judgment set for March 19, 1998, at 10:00 a.m. During the hearing on the

motion held on March 19, 1998, no representative from Northwestern appeared. As a result, the court entered a default judgment against Northwestern.

Almost one month later, on April 17, 1998, Northwestern filed a Motion to Correct Errors and Motion to Set Aside Default Judgment. In its motion, Northwestern contended that the judgment should be set aside because it did not receive proper service and its failure to answer the complaint was the result of mistake and excusable neglect. However, following a hearing on September 23, 1998, the trial court denied Northwestern's motion, concluding that Northwestern had failed to demonstrate excusable neglect.[2]

Northwestern contends that the trial court erroneously denied its Motion to Set Aside Default Judgment on two grounds. First, Northwestern argues that the Mapps failed to properly serve it with the summons and complaint in accordance with the rules for service upon an organization and, therefore, the default judgment entered against it was void. Northwestern further argues that because its Columbus, Ohio office was closed for a period of time during which the Mapps' claim was being processed and that after Tardell was terminated she never communicated to Kozek the status of the case, there was a "breakdown in communication" which amounted to excusable neglect. Appellant's Brief at 11.

Ind. Trial Rule 60(B), which governs proceedings to set aside a default judgment, provides that "[o]n motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default...." Although T.R. 60(B) lists several grounds for setting aside a default judgment, Northwestern based its motion

---

**2.** The trial court, however, did vacate that part of its April 13, 1998 order which granted the Mapps a money judgment against Northwestern. Specifically, the court reasoned that a money judgment against Northwestern was premature because the Mapps had not yet instituted a direct action against E.W. Builders.

upon T.R. 60(B)(1), which allows a judgment to be set aside when the party has demonstrated "mistake, surprise, or excusable neglect" and T.R. 60(B)(6) which permits a judgment which is "void" to be set aside.

■ In presenting its motion, Northwestern carried the burden of demonstrating that it was entitled to relief under the relevant subdivisions of T.R. 60(B). *Bonaventura v. Leach* (1996) Ind.App., 670 N.E.2d 123, 125, *trans. denied; disapproved on other grounds by Smith v. Johnston* (1999) Ind., 711 N.E.2d 1259, 1263. On appeal of the trial court's denial of Northwestern's motion, we review the trial court's decision for an abuse of discretion. *Id.* That is, we will presume the trial court's judgment is valid and reverse only if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

### A. Proper Service

■ Northwestern first contends that the trial court erroneously failed to set aside the default judgment because the Mapps failed to properly serve it with the summons and complaint. Therefore, Northwestern contends that the Mapps did not acquire personal jurisdiction over it and, consequently, any judgment rendered against it is void. As Northwestern suggests, if service of process is inadequate, the court does not acquire personal jurisdiction over a party and any default judgment issued without personal jurisdiction is void. *Fidelity Financial Services, Inc. v. West* (1994) Ind.App., 640 N.E.2d 394, 396, 400. Therefore, we must determine whether or not the Mapps properly served Northwestern with the summons and complaint.

Ind. Trial Rule 4.6, which governs service of process upon an organization, provides in relevant part as follows:

Rule 4.6. Service upon organizations

(A) Persons to be served. Service upon an organization may be made as follows:

(1) In the case of a domestic or foreign organization upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent.

\* \* \*

(B) Manner of Service. Service under subdivision (A) of this rule shall be made on the proper person in the manner provided by these rules, for service upon individuals, but a person seeking service or his attorney shall not knowingly direct service to be made at the person's dwelling house or place of abode, unless such is an address furnished under the requirements of a statute or valid agreement, or unless an affidavit on or attached to the summons states that service in another manner is impractical.

(C) Service at Organization's Office. When shown upon an affidavit or in the return, that service upon an organization cannot be made as provided in subdivision (A) or (B) of this rule, service may be made by leaving a copy of the summons and complaint at any office of such organization located within this state with the person in charge of such office.

According to Northwestern, the Mapps were required to attempt to comply with subdivisions (A) and (B), by serving process upon an executive officer or his agent, before attempting service under subdivision (C). Northwestern further argues that even if the Mapps were unable to comply with subdivisions (A) and (B) and, therefore, were permitted to attempt service under subdivision (C), they failed to make the requisite showing by "affidavit or in the return."

In response, the Mapps concede that attempting service upon an organization's executive officer or registered agent is the

"primary method" for effectuating service upon an organization under T.R. 4.6(A)(1). Appellees' Brief at 10. However, the Mapps contend that they succeeded in complying with this provision by serving the complaint upon Regional Claims Manager Ken Kozek, by certified mail, return receipt requested, in January of 1997. The Mapps further contend that even if they did not succeed in effectuating service in their first attempt, they "clearly satisfied all statutory and due process requirements" by directing the alias summons and complaint to the highest available officer at the Columbus, Ohio office on August 1, 1997. Appellees' Brief at 10. Finally, the Mapps contend that even if their attempts at service under T.R. 4.6 were somehow deficient, the service should not be adjudged insufficient because it was reasonably calculated to inform Northwestern that an action had been instituted against it in accordance with Ind. Trial Rule 4.15(F).

As Northwestern contends, subdivisions (A) and (B) state that a party should first attempt to serve either an executive officer or his agent in accordance with the rules governing service upon individuals, except that service should not be made by leaving the summons and complaint at the person's dwelling house or place of abode.[3] Thus, in attempting service upon an executive officer or his agent, a party may use any of the following methods: (1) "sending a copy of the summons and complaint by registered or certified mail ... to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter;" (2) "delivering a copy of the summons and complaint to him personally;" or (3) "serving his agent as provided by rule, statute or valid agreement." Ind. Trial Rule 4.1(A)(1),(2),(4). For purposes of effectuating service, an executive officer is defined broadly to include, not only the officers of an organization, but also the "cashier, director, chairman of the board of directors or trustees, *office manager*, plant manager, *or subdivision manager*, partner, or majority shareholder." Ind. Trial Rule 83(2) (emphasis supplied). Further, "[f]or purposes of service of process, notice and other papers, the term [executive officer] includes the personal secretary of any of the foregoing persons or any person employed under or with any of the foregoing persons and who is entrusted with responsible handling of legal papers, and any person employed in the organization if such person promptly delivers the papers served to one of the foregoing." T.R. 83(2). Thus, service may be made upon an organization by serving any of the aforementioned persons by use of any means to serve an individual except delivery at the person's dwelling house or place of abode.

■ Here, the Mapps first attempted service upon Northwestern in January of 1997, apparently by sending the summons and complaint by certified mail, return receipt requested, to Ken Kozek, the Regional Claims Manager, at the Columbus, Ohio office. As indicated by his title, Kozek certainly could be considered an "executive officer" by functioning as either the officer manager or subdivision manager of the Columbus, Ohio office. Further, service by certified mail, return receipt requested, is a permissible method of service. *See* T.R. 4.1(A)(1). However, as the Mapps concede, the clerk's file did not contain a return receipt. Because T.R. 4.1(A)(1) requires that the return receipt be "returned showing receipt of the letter" in order to complete service by certified mail, the Mapps failed in their attempt to effectuate service in January of 1997.

---

**3.** T.R. 4.6(B) provides an exception to the general rule that service may not be made at the officer or agent's dwelling house or place of abode "unless such is an address furnished under the requirements of a statute or valid agreement, or unless an affidavit on or attached to the summons states that service in another manner is impractical." However, neither party contends that this exception applies in the instant case.

However, the Mapps made a second attempt at service in August of 1997 by directing an alias summons and complaint to the "highest available officer" at the Columbus, Ohio, office via certified mail. Northwestern contends that, by doing so, the Mapps were attempting service under T.R. 4.6(C) by leaving a copy of the summons and complaint at an office located within this state and, therefore, were required to comply with the affidavit requirement. However, the record reveals that the Mapps sent the summons and complaint by certified mail, not by leaving a copy of the summons and complaint, and further directed service to the Columbus, Ohio office, not an office located in Indiana. Therefore, contrary to Northwestern's contentions, the Mapps' August 1997 attempt at service did not fall under subdivision (C). Therefore, we need only determine whether the Mapps were successful in effectuating service under T.R. 4.6(A).

Northwestern, an Ohio corporation, is subject to the jurisdiction of Indiana pursuant to Indiana Trial Rule 4.4(A)(6) in that under the allegations of the complaint it "contract[ed] to insure ... any person, property or risk located within [Indiana]...." Such jurisdiction may be obtained by service pursuant to T.R. 4.1.

■ As noted, certified mail is an acceptable method of service. Further, the record reveals that the summons and complaint were delivered to Northwestern's Columbus, Ohio office on August 6, 1997, and that the return receipt was signed for by an employee of Northwestern [4] and returned. Thus, the only question which remains is whether by directing service to the "highest available officer," as opposed to an "executive officer" or "office manager," the Mapps successfully gained personal jurisdiction over Northwestern under T.R. 4.6(A)(1).

The rule expressly provides that service be directed to an "executive officer." Further, as stated, the term "executive officer" is broadly defined to include such persons as office managers and subdivision managers. Although the Mapps, by directing service to the "highest available officer" did not direct their summons to any of these specific persons, this court has not required strict compliance in setting forth these terms in order to successfully gain service upon an organization.

For example, in *Taco Bell Corp. v. United Farm Bureau Mut. Ins. Co.* (1991) Ind. App., 567 N.E.2d 163, *trans. denied,* this court was asked to determine whether service directed to the "Chief Executive Officer" (CEO) at a local Taco Bell restaurant in Indiana was sufficient to gain service upon an "executive officer" as that term is defined under T.R. 83(2), even though the "CEO" resided and worked in another state. On appeal, we found that the term "executive officer" was broadly defined under T.R. 83(2) to include an office manager, plant manager or subdivision manager, and that the "clear intent of [T.R. 4.6(A)(1)] is to make service upon an organization's local manager effective as service upon the organization." *Id.* at 164. We then concluded, without deciding whether or not the person who received the summons and complaint was the office, plant or subdivision manager, that the person to whom service was directed was a person contemplated under the rules. *Id.* See also *Fidelity Financial, supra,* 640 N.E.2d at 401 (determining that service had been accomplished under T.R. 4.6(A)(1) where summons and complaint were directed to the "Highest Executive Officer" at a local office of corporation and accepted by employee of corporation).

Here, there is no evidence that the CEO or other traditional officers of Northwestern worked at the Columbus, Ohio office. Nonetheless, by directing service to the "highest available officer" at the Columbus

4. Specifically, the return receipt indicates that it was signed for by Kay Fowler. However-

er, there is no indication of the capacity in which she was employed.

office, the Mapps were, in effect, directing service to the "office manager" or the "subdivision manager." As the clear intent of T.R. 4.6(A)(1) is to make service upon the local manager effective as service upon an organization, the Mapps obtained proper service when they served the alias summons in August of 1997.

We further note that although neither the return receipt nor the record reveals in what capacity the person who signed the return receipt was employed, Northwestern does not argue that the person was not an "executive officer" as that term is defined under T.R. 83 or that the recipient failed to deliver the papers to the "highest available officer" as required by Ind. Trial Rule 4.16(B)(1).[5] Therefore, Northwestern is not entitled to have the default judgment set aside for lack of service. *See Taco Bell, supra,* 567 N.E.2d at 165 (although return of service from local restaurant did not indicate status of person who received service, Taco Bell did not attempt to argue that recipient failed to deliver papers to manager and, therefore, was not entitled to set aside default judgment); *Fidelity Financial, supra,* 640 N.E.2d at 401 (although neither return receipt nor record indicated capacity in which person who signed receipt was employed by organization, organization did not argue that recipient was not manager or failed to deliver summons to manager as required by Ind. Trial Rule 4.16).[6]

■ In any event, even if by directing the summons and complaint to the "highest available officer" rather than the "executive officer" or office or subdivision manager, the Mapps failed to technically comply with T.R. 4.6(A)(1), any defect was cured by T.R. 4.15(F), as the service was reasonably calculated to inform Northwestern that an action had been instituted against it. Pursuant to the rule, "[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." T.R. 4.15(F). According to Northwestern, although *Kozek* had actual knowledge of the lawsuit in March of 1997 through a fax transmission sent to him at the Columbus, Ohio office, such notice does not cure an alleged defect under T.R. 4.15(F) when there has been a total failure to serve. While we agree that actual notice alone does not cure a total failure to serve, *see Overhauser v. Fowler* (1990) Ind.App., 549 N.E.2d 71, 73 (Rule 4.15(F) cures only technical defects where service has been attempted despite actual notice of lawsuit), we do not agree that the summons and complaint sent in August of 1997 were not reasonably calculated to in-

5. T.R. 4.16(B)(1) provides that "[a]nyone accepting service for another person is under a duty to . . . promptly deliver the papers to that person."

6. Northwestern does argue that there is no evidence that Tardell tendered the complaint to an executive officer for Northwestern. Apparently, at some point after the August summons and complaint were delivered to the Columbus office, they were forwarded to Tardell as evidenced by the fax transmission she sent the Mapps' attorney on August 6, 1997. Although T.R. 4.16(B), states that "[a]nyone accepting service for another person is under a duty to . . . promptly deliver the papers to that person," the employee who signed the return receipt, not Tardell, was under the duty to tender the complaint to an executive officer of Northwestern. In any event, Kozek

admits that he had notice of the action in March of 1997. Therefore, we fail to see how Tardell's alleged failure to forward the complaint to an executive officer would have prevented the entry of default judgment.

We further acknowledge that a majority of our Supreme Court in *LaPalme v. Romero* (1993) Ind., 621 N.E.2d 1102, 1106, *reh'g denied,* concluded that T.R. 4.16 contemplates that the person "accepting service for another" have authority to do so. Such a person in this case would seem to be a personal secretary of the person being served or a person entrusted with the responsible handling of legal papers. *See* T.R. 83(2). Northwestern, however, makes no attempt to argue that the person who signed the return receipt *did not* have authority to accept service.

form Northwestern that an action had been instituted against it.

■ Although the Mapps did not specifically indicate that the summons and complaint were to be directed to an "executive officer," office manager or subdivision manager, it was clear that the highest available officer was the office or subdivision manager. Therefore, the summons and complaint were reasonably calculated to inform Northwestern of the action instituted against it. Further, although actual notice alone will not cure defective service, it may be considered in determining whether the notice was reasonably calculated to inform an organization of the action. *See Glennar Mercury–Lincoln, Inc. v. Riley* (1975) 167 Ind.App. 144, 152, 338 N.E.2d 670, 675 (although actual notice alone will not cure defective service, it may be considered in determining whether service was reasonably calculated to inform organization that action has been instituted against it), *trans. denied.* Here, the record reveals that a few days after the alias summons and complaint were delivered to Northwestern, Tardell contacted the Mapps and faxed a copy of that alias summons and complaint to the Mapps' attorney in an effort to obtain additional information on E.W. Builders. Although there is no evidence that Tardell was an "executive officer," a reasonable inference could be drawn that Tardell had received the summons from the office or subdivision manager. Thus, any technical deficiency was cured under T.R. 4.15(F).

*B. Excusable Neglect*

■ Northwestern also contends that the trial court abused its discretion by concluding that Northwestern had failed to demonstrate excusable neglect in failing to answer the Mapps' complaint. Specifically, Northwestern argues that a breakdown in communication occurred between Kozek and Tardell after Kozek referred the case to Tardell in March of 1997. According to Northwestern, after assigning the case, Kozek believed that counsel had been re-

tained by Tardell to represent Northwestern.

■ A party seeking to set aside a default judgment on grounds of excusable neglect must establish the grounds for relief and the existence of a meritorious defense. *McDermitt v. Logan* (1998) Ind. App., 698 N.E.2d 331, 333, *trans. denied.* One well-recognized ground for relief is a breakdown in communication which results in a party's failure to appear. *See Whittaker v. Dail* (1992) Ind., 584 N.E.2d 1084, 1087 (defendant demonstrated breakdown in communication which caused judgment to be set aside where insurance adjuster believed she had employed attorney to defend insured but attorney misunderstood communication to mean that he was to institute action against the insured); *Boles v. Weidner* (1983) Ind., 449 N.E.2d 288, 290–91 (breakdown in communication amounting to excusable neglect established where defendant delivered summons and complaint to independent insurance agent who was supposed to notify insurance carrier), *reh'g denied; Whelchel v. Community Hosp. of Ind., Inc.* (1994) Ind.App., 629 N.E.2d 900, 903 (excusable neglect demonstrated where attorney mistakenly believed that only one rather than two actions were pending against client), *trans. denied.* However, not all breakdowns in communication require a default judgment to be set aside; rather, the breakdown must result in the party's failure to appear. *Bennett v. Andry* (1995) Ind.App., 647 N.E.2d 28, 32. Further, the trial court is afforded broad discretion in determining whether a breakdown in communication constitutes excusable neglect as such determinations turn upon unique factual settings. *Boles, supra* at 290.

Northwestern attempts to analogize its case to *Whittaker* in which the defendant had contacted his insurance company and was informed that it would employ an attorney to defend him at trial. However, the attorney, believing that he was supposed to file a declaratory judgment action against the defendant, rather than defend him, failed to appear after which default

judgment was entered against the defendant. Upon appeal, our Supreme Court found that a breakdown in communication which amounted to excusable neglect occurred because the defendant had done everything that he could do and there had been no "foot dragging" on the part of the defendant. *Whittaker, supra,* 584 N.E.2d at 1087.

Recently, our Supreme Court again had an opportunity to determine whether a breakdown in communication constituted excusable neglect. In *Smith v. Johnston* (1999) Ind., 711 N.E.2d 1259, a doctor and his medical group were sued for medical malpractice. Although allegedly an office manager had usually received all summonses and complaints, because the medical group was facing financial difficulties, the legal manager was in the process of leaving the office. Consequently, a scrub nurse, who did not normally receive the mail, received the summons and placed it on the doctor's desk. However, the doctor did not open the letter until after default judgment was entered against him.

On appeal, the doctor argued that a breakdown in communication had occurred which constituted excusable neglect. The Supreme Court, however, disagreed, concluding that the doctor was aware that the person who had normally received the mail was no longer doing so and had simply failed to read his mail. *Id.* at 1262. In distinguishing the case from prior cases in which excusable neglect had been found, the Court noted that in the prior cases "the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in the failure to appear." *Id.*

Here, we conclude, as did the *Johnston* court, that the defendant did not demonstrate excusable neglect. Kozek admits having assigned the file to Tardell in March of 1997. As Tardell was a senior claims representative, with at least twenty years experience, presumably Kozek did not give Tardell extensive instructions, if any, with regard to the manner in which

the claim should be handled. However, in August of 1997 when Tardell was terminated from Northwestern, an answer still had not been filed. Although an answer was not due until the end of August due to ineffective service in January of 1997, presumably Kozek was still under the impression that an answer should have been filed by that time. However, had Kozek or whoever was in charge of reassigning the Mapps' claim referenced the file, he would have discovered that an answer was not due until the end of August and could have ensured that all appropriate actions were taken to ensure that Northwestern's interests were protected. Northwestern also could have ensured that all of its claims were being attended to when the Columbus, Ohio office was temporarily relocated to New Jersey and subsequently reopened. Northwestern has not pointed to any communication which resulted in a misrepresentation to it and which resulted in its failure to appear. Rather, it seems that there was no communication at all. Under these circumstances, we echo the sentiments of the *Johnston* court which noted, "[t]his is neglect, but not excusable neglect as the term appears in Rule 60(B)(1)." *Johnston, supra,* 711 N.E.2d at 1262. Further, regardless of Tardell's action or inaction, we cannot say that Kozek or whoever was responsible for overseeing claims at the Columbus office did all that he could do to ensure that a representative from Northwestern answered the complaint, diligently investigated the Mapps' claim and appeared at any scheduled hearings. Therefore, we cannot say that the trial court abused its discretion by concluding that Northwestern failed to demonstrate excusable neglect. Consequently, we need not determine whether Northwestern had a meritorious defense.

The judgment is affirmed.

RILEY, J., and MATTINGLY, J., concur.