

**FILED**

Feb 01 2017, 5:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce P. Clark
Bruce P. Clark & Associates
Saint John, Indiana

ATTORNEYS FOR APPELLEE

Duke T. Escue
Walter J. Alvarez
Walter J. Alvarez, P.C.
Crown Point, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Menard, Inc.,<br>*Appellant-Defendant,*<br><br>v.<br><br>Reba Lane,<br>*Appellee-Plaintiff.* | February 1, 2017<br><br>Court of Appeals Case No.<br>45A03-1606-CT-1283<br><br>Appeal from the Lake County<br>Circuit Court<br><br>The Honorable George Paras,<br>Judge;<br>The Honorable Robert Vann,<br>Magistrate<br><br>Trial Court Cause No.<br>45C01-1308-CT-128 |

**May, Judge.**

[1]     Menard, Inc. ("Menard") appeals the denial of its motion to set aside the default judgment entered in favor of Reba Lane when Menard failed to appear or defend itself against her personal injury suit. As we conclude the trial court did not abuse its discretion in denying Menard's motion to set aside the default judgment, we affirm.

# Facts and Procedural History

[2]     On August 29, 2013, Lane filed a personal injury claim against Menard alleging she suffered injuries as a result of a malfunctioning shopping cart at the Menard store in Gary, Indiana. On September 16, 2013, Lane sent a summons to Menard's former registered agent, CT Corporation. On September 24, 2013, CT Corporation sent Lane correspondence indicating:

> Menard Inc. is inactive on the records of the State of [Indiana]. Our services for this entity have also been discontinued for more than five (5) years and, as such, we no longer maintain an active record of this entity. Since we have no address to which to forward this process, we have not done so.

(App. Vol. II at 68.)

[3]     On September 19, 2013, Sergeant Brian Coubal with the Lake County Sheriff's Department served the summons at the Menard store in Gary, Indiana. The summons was addressed to "Attn: Highest Executive Officer Found on Premises." (*Id*. at 10.) Sergeant Coubal also mailed, via certified mail with return receipt requested, a copy of the summons to the store's address with the

same direction to deliver it to the highest executive officer found on the premises, and Sergeant Coubal received the return receipt.[1]

[4] On January 7, 2014, Lane filed a Request for Entry of Default Judgment because Menard had not answered her complaint. The trial court granted her request on March 17, 2014, and held a damages hearing on May 15, 2014. On May 29, 2014, the trial court awarded $500,000.00 in damages to Lane and entered judgment therefor.

[5] On July 25, 2014, Lane filed a Motion to Enforce Judgment by Proceedings Supplemental. Lane sent a copy of that motion to the Menard store address in Gary, Indiana, via regular mail. On August 19, 2014, counsel for Menard entered an appearance and filed a motion to set aside default judgment, arguing the default judgment was void under Indiana Trial Rule 60(B)(6) for lack of personal jurisdiction based on several alleged defects in service; was "tainted" by attorney misconduct under Trial Rule 60(B)(3) and the Indiana Rules of Professional Conduct; and was a product of excusable neglect under Trial Rule 60(B)(1). (App. Vol. II at 25.)

---

[1] The Chronological Case Summary indicates the summons and complaint were delivered to the local Menard store via certified mail on September 24, 2016. Under "Comment" the court noted, "Signature Illegible." (App. Vol. II at 9.)

The parties filed reply and supplemental briefs for almost a year. The trial court held oral argument on the matter on June 4, 2015. On May 6, 2016, the trial court denied Menard's motion to set aside default judgment.

# Discussion and Decision

A default judgment "is an extreme remedy and is available only where that party fails to defend or prosecute a suit." *Smith v. Johnston*, 711 N.E.2d 1259, 1264 (Ind. 1999). "A judgment by default which has been entered may be set aside by the court for the grounds and in accordance with the provisions of [Trial Rule] 60(B)." Ind. Trial Rule 55(C). "In general, we review a trial court's denial of a motion to set aside judgment for an abuse of discretion, and in so doing, determine whether the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment." *LePore v. Norwest Bank Indiana, N.A.*, 860 N.E.2d 632, 634 (Ind. Ct. App. 2007).

### Service of Process

Trial Rule 60(B)(6) allows for relief from a default judgment if a judgment is void. Our standard of review regarding the trial court's decision on a Trial Rule 60(B)(6) motion is well-settled:

> [A] trial court has no discretion on how to rule on a Trial Rule 60(B)(6) motion once a judgment is determined to be either void or valid. If a judgment is void, the trial court cannot enforce it and the motion under 60(B)(6) must be granted; if a judgment is valid, the trial court cannot declare it void and the motion must be denied.

*Anderson v. Wayne Post 64*, 4 N.E.3d 1200, 1205 (Ind. Ct. App. 2014), *trans. denied*. One reason a judgment may be void is for inadequate service on a defendant. *Id.* at 1206.

[9]     The Fourteenth Amendment to the United States Constitution "requires that in order for constructive notice of a lawsuit to be sufficient, a party must exercise due diligence in attempting to locate a litigant's whereabouts." *Munster v. Groce*, 829 N.E.2d 52, 60 (Ind. Ct. App. 2005). A party must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." Ind. Tr. R. 4.15(F).

[10]    Trial Rule 4.6(A)(1) states, in relevant part,[2] "Service upon an organization may be made as follows: (1) In the case of a domestic or foreign organization upon an executive officer thereof[.]" The "executive officer" of a domestic or foreign organization includes

---

[2] The other portions of Trial Rule 4.6(A) concern service to other types of businesses and governmental entities.

the president, vice president, secretary, treasurer, cashier, director, chairman of the board of directors or trustees, office manager, plant manager, or subdivision manager, partner, or majority shareholder. For purposes of service of process, notice and other papers, the term includes the personal secretary of any of the foregoing persons or any person employed under or with any of the foregoing persons and who is entrusted with responsible handling of legal papers, and any person employed in the organization if such person promptly delivers the papers served to one of the foregoing.

T.R. 83(2).

Service upon an organization under Trial Rule 4.6(A) "shall be made on the proper person in the manner provided by these rules for service upon individuals[.]" T.R. 4.6(B). Service upon an individual may be completed by:

> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or

> (2) delivering a copy of the summons and complaint to him personally; or

> (3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or

> (4) serving his agent as provided by rule, statute or valid agreement.

T.R. 4.1(A). Further, when a person other than the individual who is authorized to receive service of process accepts service, that person is

under a duty to:

(1) promptly deliver the papers to that person;

(2) promptly notify that person that he holds the papers for him; or

(3) within a reasonable time, in writing notify the clerk or person making the service that he has been unable to make such delivery of notice when such is the case.

T.R. 4.16(B).

[12] Here, Lane served Menard at their local store via process server Sergeant Coubal. Sergeant Coubal stated in his deposition he had been a process server for approximately six years and had served hundreds of subpoenas. He stated in his affidavit, when serving business entities, "it is my usual and customary practice as a process server to personally hand deliver the summons, complaints, and all other attached legal documents upon the appropriate and/or designated employees of said businesses, corporations or other organizations; specifically, the manager and/or highest executive officer found." (App. Vol. II at 151.) The summons designated as evidence included a stamp signed by Sergeant Coubal certifying he served the summons on September 18, 2013. Sergeant Coubal also indicated he sent the summons via certified mail and received a signed return receipt. Both the summons Sergeant

Coubal delivered and the summons sent certified mail were addressed to "Attn: Highest Executive Officer Found on Premises." (*Id*. at 10.)

[13] Menard claims it did not receive the summons delivered by Sergeant Coubal or the summons sent by Sergeant Coubal via certified mail. Menard argues Sergeant Coubal's service of process was not reasonably calculated to reach the highest executive officer found on the Menard premises because, via affidavit, fourteen Menard employees indicated they had not received the summons and that non-managerial staff "were not authorized, entrusted, or expected to accept legal papers on behalf of Menard and were not instructed, taught, trained or otherwise made aware on how to handle lawsuits if served by the sheriff or process server." (App. Vol. III at 229.) In addition, Menard points to Sergeant Coubal's affidavit in which he stated:

> That although I do not have an independent recollection or memory of the specific individuals(s) upon whom I would have personally hand delivered the summons, complaint, and other legal documents at issue to: [sic] I did personally hand deliver the summons, complaint, and other legal documents to the appropriate and/or designated employee(s), namely the manager or highest executive officer found, at the Menard store[.]

(App. Vol. II at 152.)

[14] In support of their argument Sergeant Coubal's service of process was inadequate despite the stamp indicating he delivered the summons to the Menard's store and sent a copy of the same via certified mail for which he received a return receipt, Menard relies primarily on *Swiggett Lumber Const. Co.,*

*Inc. v. Quandt*, in which our court held Swiggett's request for relief from judgment was appropriate because Hall, Swiggett's registered agent, had not been properly served the summons and complaint. 806 N.E.2d 334, 337 (Ind. Ct. App. 2004). Menard focuses on the facts surrounding the personal service of a Swiggett employee:

> Quandt contends that copy service at the business to an unidentified employee of Swiggett, who represented that he understood the nature of the summons and agreed to deliver the documents to Hall, constituted service reasonably calculated to inform Hall that an action had been instituted against Swiggett. We cannot agree.

*Id*.

[15] However, this narrow reading of *Swiggett* ignores the complete holding of the case, as we concluded service to Swiggett was inadequate because Quandt did not comply with all of the requirements of Trial Rule 4.1(B), which requires "the person making such service 'shall' mail a copy of the summons to the defendant's last known address." *Id*. (quoting T.R. 4.1(B)). While our court highlighted "the rules do not contemplate that an unidentified employee of unknown position within a corporation is authorized to accept service of process for the corporation's registered agent[,]" *id*. at 338, it noted Swiggett was distinct from *Washington v. Allison*, 593 N.E.2d 1273, 1276 (Ind. Ct. App. 1992), in which "copy service was followed by mailing a copy of the summons to the defendant in an attempt to comply with [Trial Rule] 4.1(B)." *Swiggett*, 806 N.E.2d at 338 n.4.

In *Washington*, like in the case before us, copies of the summons and complaint were served personally at the defendant's office and via mail as required by Trail Rule 4.1(B). 593 N.E.2d at 1276. "Service of process that is reasonably calculated to inform, consistent with the letter of Trial Rule 4.15(F), is sufficient even if it fails to actually inform the party to which it is directed." *Swaim v. Moltan Co.*, 73 F.3d 711, 721 (7th Cir. 1996), *cert. denied sub nom Gurley v. Swaim*, 517 U.S. 1244 (1996). Sergeant Coubal followed the letter of Trial Rule 4.1(B) as evidenced by the copy of the summons with the stamp indicating he delivered the summons and complaint, and the return receipt for the copy of the summons and complaint sent by certified mail; thus, we cannot say the trial court abused its discretion when it denied Menard's motion to set aside default judgment based on the adequacy of Lane's service of process.[3]

### Notification of Attorney

Under Trial Rule 60(B)(3), "the court may relieve a party . . . [from] a judgment by default" when that party demonstrates "(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of

---

[3] Menard also argues service was inadequate because Lane completed service by mail to the wrong registered agent and should have done further research to determine the correct registered agent to send service to. Menard designated a copy of the Secretary of State's page for the correct registered agent, as well as the information about Menard's registered agent in its home state of Wisconsin. However, as Lane served the summons and complaint on the local office of the corporation pursuant to the requirements of Trial Rule 4.6(A)(1), she was not required to serve the registered agent. *See* T.R. 4.6(A)(1) ("In the case of a domestic or foreign organization upon an executive officer thereof, *or* if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent.") (emphasis added); *see also Volunteers of America v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 659 (Ind. Ct. App. 2001) ("service upon the local office of an organization is effective service upon the organization").

an adverse party." Menard alleged misconduct by Lane's attorney in its memorandum in support of its motion to set aside the default judgment: "despite having litigated cases against Menard in this area in the past, plaintiff's counsel made no attempt to contact Menard or the firms that commonly represent it and which have worked with plaintiff's counsel in the past, regarding the Motion for Default Judgment." (App. Vol. II at 36.) In support of that contention, Menard designated two affidavits from two attorneys from two different firms who had represented Menard in the past in actions brought by the law firm representing Lane.

[18] Menard likens the facts here to those in *Smith*, 711 N.E.2d at 1264, wherein our Indiana Supreme Court held service was inadequate because the plaintiff, Johnston, did not serve the summons and complaint on Smith's attorney. In that case, Johnston filed a medical malpractice complaint against Smith before the Indiana Department of Insurance. *Id*. at 1261. After the Indiana Department of Insurance panel found in favor of Johnston, his counsel sent Smith's counsel a letter with a settlement offer. Smith's counsel, Locke Reynolds Boyd & Weisell ("Locke Reynolds"), rejected Johnston's settlement offer via letter shortly before Johnston filed suit against Smith.

[19] The complaint was served on Smith at his place of business by certified mail and a scrub nurse signed for the summons. Smith did not file an appearance or answer in the action, and approximately six weeks after filing his complaint, Johnston moved for default judgment. The trial court entered default judgment

in favor of Johnston and ordered damages in the amount of $750,000 plus costs of $2,407.

[20] Six days after the trial court's order, Smith's attorney from Locke Reynolds filed an appearance and a notice of intent to file a motion to set aside the default judgment. Smith subsequently filed a motion to set aside default judgment, alleging excusable neglect under Trial Rule 60(B)(1) and attorney misconduct under Trial Rule 60(B)(3). The trial court denied Smith's motion.

[21] On appeal, Smith argued the failure of Johnston's attorney, Neiswinger, to provide a copy of the complaint or summons to Locke Reynolds when Neiswinger knew Locke Reynolds represented Smith "was misconduct warranting relief from the default judgment." *Id*. at 1262. Johnston argued Neiswinger did not have a duty under the Trial Rules to provide a copy of the complaint or summons to Smith's attorney, only to Smith, because he was the party. Our Indiana Supreme Court explained, citing the Indiana Rules of Professional Responsibility:

> The Rules are guidelines for lawyers and do not spell out every duty a lawyer owes to clients, the court, other members of the bar and the public. The preamble to the Rules is clear that "[t]he Rules, do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules." Thus lawyers' duties are found not only in the specific rules of conduct and rules of procedure, but also in courtesy, common sense and the constraints of our judicial system. As an officer of the Court, every lawyer must avoid compromising the integrity of his or her own reputation and that of the legal process itself. These

considerations alone demand that Neiswinger take the relatively simple step of placing a phone call to Locke Reynolds before seeking a default judgment.

In addition, [Indiana Professional Responsibility] Rule 8.4(d) explicitly states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. The administration of justice requires that parties and their known lawyers be given notice of a lawsuit prior to seeking a default judgment. A default judgment is appropriate only where a party has not appeared in person or by counsel and, if there is a lawyer known to represent the opposing party in the matter, counsel had made reasonable effort to contact that lawyer.

*Id.* at 1263-4 (internal citations omitted). The Court further noted Neiswinger's misconduct implicated "overriding considerations of confidence in our judicial system and the interest of resolving disputes on their merits." *Id.* at 1261-62.

[22] However, *Smith* is distinguishable. In this case, Menard indicated in its memorandum in support of its motion to set aside the default judgment, "despite having litigated cases against Menard in this area in the past, plaintiff's counsel made no attempt to contact Menard or the firms that commonly represent it and which have worked with plaintiff's counsel in the past, regarding the Motion for Default Judgment." (App. Vol. II at 36.) In support of that contention, Menard designated two affidavits from two attorneys from two different firms who had represented Menard in the past in actions brought forth by the law firm representing Lane.

In *Smith*, Locke Reynolds represented Smith in legal proceedings directly related to the complaint filed by Johnston. The parties, facts, and attorneys were the same throughout. Here, there were at least two law firms that had represented Menard in the past, and neither indicated it was involved in litigation surrounding this particular incident. We cannot agree with Menard that Lane's counsel was under a duty to notify multiple law firms of this litigation simply because Lane's counsel knew those firms had represented Menard in other unrelated litigation. The trial court did not abuse its discretion when it denied Menard's motion for relief of judgment based on alleged misconduct by Lane's attorney.

### Excusable Neglect

Under Trial Rule 60(B)(1), a default judgment may be set aside for "mistake, surprise, or excusable neglect." There are no fixed standards "to determine the bounds of 'mistake, surprise or excusable neglect.'" *Indiana Dept. of Nat. Res. v. Van Keppel*, 583 N.E.2d 161, 162 (Ind. Ct. App. 1991), *trans. denied*. Menard argues the trial court abused its discretion when it denied its motion to set aside default judgment because there existed excusable neglect. Menard contends, "assuming that service had been perfected on an unidentified employee of Menard, there must have been some issue with communicating that fact to the appropriate individual." (Br. of Appellant at 24.)

In support of their argument, Menard cites *Nw. Nat. Ins. Co. v. Mapps*, 717 N.E.2d 947, 956 (Ind. Ct. App. 1999), and *Smith*, 711 N.E.2d at 1262. However, those cases actually support the premise a breakdown in

communication is *not* excusable neglect. In *Mapps*, our court concluded it was not excusable neglect when Northwestern did not file an answer to Mapps' complaint because the regional manager had notice of the claim and was responsible for ensuring Northwestern's interests were protected after the agent assigned the case was terminated and the office closed. 717 N.E.2d at 956. In *Smith*, our Indiana Supreme Court stated it was "neglect, but not excusable neglect," 711 N.E.2d at 1262, when Smith "was aware that the person who had normally received the mail was no longer doing so and had simply failed to read his mail." *Mapps*, 717 N.E.2d at 956.

[26] Here, we have concluded Menard received service of process via personal delivery to the local Menard store and via certified mail to that store. The subsequent location of the summons and complaint is irrelevant and can be attributed to neglect, though not excusable neglect, by the Menard employee(s) who received the information and did not pass it to the appropriate person or act upon it. The trial court did not abuse its discretion when it denied Menard's motion for relief from judgment based on excusable neglect.

# Conclusion

[27] Lane attempted service of her complaint and summons in multiple ways, all of which conformed with the requirements of the Indiana Trial Rules. Additionally, Lane's attorney did not engage in misconduct when she did not notify the two law firms who had represented Menard in the past. Finally, the

breakdown in communication between Menard employees regarding the summons and complaint was not excusable neglect. Accordingly, we affirm.

[28] Affirmed.

Kirsch, J., and Crone, J., concur.