Ray C. SMITH, III, M.D., and Smith Surgical Group, Appellants (Defendant below),

v.

Donald James JOHNSTON, Husband and Executor of the Estate of Beverly Joanne Johnston, Deceased, Appellee (Plaintiff below).

No. 49S05–9902–CV–141.

Supreme Court of Indiana.

May 27, 1999.

**1260**

Sandra Boyd Williams, Todd J. Kaiser, Mary Ruth Feldhake, Indianapolis, Indiana, Attorneys for Appellants

Karen B. Neiswinger, Indianapolis, Indiana, Attorney for Appellee.

Defense Trial Counsel of Indiana, Leonard E. Eilbacher, James P. Fenton, Fort Wayne, Indiana, James D. Johnson, Evansville, Indiana, Attorneys for Amicus Curiae.

**ON PETITION TO TRANSFER**

BOEHM, Justice.

We hold that a default judgment must be set aside under Trial Rule 60(B)(3) for misconduct where the plaintiff's attorney filed suit and pursued the default judgment without notifying the attorneys whom she had

been advised in writing were representing the defendant in the matter.

### Factual and Procedural Background

Donald Johnston filed a proposed complaint with the Indiana Department of Insurance against Dr. Ray C. Smith, III, and Smith Surgical Group[1] for medical malpractice in the treatment of his wife Beverly Johnston.[2] Throughout the panel proceedings Johnston was represented by Karen Neiswinger and Smith and his group were represented by Locke Reynolds Boyd & Weisell. In November 1995, the medical review panel unanimously found that Smith failed to comply with appropriate standards of care.

Soon after the panel report, Neiswinger sent a letter to Locke Reynolds demanding the policy limits in settlement. After a month passed with no response to Neiswinger's letter, Johnston filed suit against Smith and Smith Surgical Group in the Marion Superior Court. When Neiswinger returned from the courthouse after filing the suit, she found in her mail a letter from Locke Reynolds rejecting her settlement demand.

The relevant facts are not in dispute. Smith and Smith Surgical were served with the complaint by certified mail on January 11, 1996, at their place of business. Cindy Smith, a scrub nurse, signed for the summonses. No appearance was filed on behalf of Smith. Johnston moved for a default judgment on February 20, 1996, approximately six weeks after filing the complaint. Neiswinger had made no effort at any time after sending her settlement demand to communicate with Locke Reynolds. In a sworn affidavit to the trial court, she stated that:

> I certify that no pleading has been delivered to Plaintiffs or to their counsel by the Defendants or any attorney appearing for Defendants, nor to the knowledge of the undersigned has any attorney entered an appearance since the filling of this cause,

nor has any attorney contacted undersigned regarding entering their appearance on behalf of Defendants in this case since the filing of this cause.

The court granted a default judgment on liability one day later and set a hearing on damages for March 22, 1996, thirty days later. Judgment was entered on the day of the damages hearing in the amount of $750,-000 and costs of $2,407.[3] The judgment was served on Smith, but not Locke Reynolds.

Six days after the $750,000 judgment was entered, Locke Reynolds entered an appearance and filed a notice of intent to petition to set aside the default judgment. Smith moved to set aside the default judgment under Trial Rule 60(B)(1) for excusable neglect based on a "breakdown in communication" and under Trial Rule 60(B)(3) for misconduct by Johnston's attorney. Smith contended that Neiswinger was obligated to provide a copy of the complaint and subsequent papers to Smith's attorneys when she knew Smith was represented by counsel. Smith also alleged a meritorious defense as required in seeking to set aside a default judgment. The trial court, relying on *Bonaventura v. Leach,* 670 N.E.2d 123 (Ind.Ct.App.1996), denied Smith's motion to set aside. Smith appealed the denial of his motion to set aside the judgment, the Court of Appeals affirmed, and we granted Smith's petition to transfer.

 We agree that the trial court's ruling was consistent with applicable precedent, including the case relied on by the trial court in its order. We also agree that the trial court was within its discretion to conclude that Smith's failure to read his mail is not excusable neglect under Rule 60(B)(1). However, we conclude that the overriding considerations of confidence in our judicial system and the interest of resolving disputes

---

1. The complaint named Smith Surgical Group as a co-defendant based on its vicarious liability for the acts of Smith. Both defendants were represented by the same attorneys throughout this case.

2. The proposed complaint was filed by both Beverly and Donald Johnston. Mrs. Johnston passed away and Mr. Johnston, as executor of Beverly's

estate, was substituted as plaintiff. All references in this opinion are to Mr. Johnston.

3. For reasons not apparent to us Johnston also moved for Summary Judgment four days after obtaining the $750,000 judgment. Smith successfully moved to strike that motion as redundant, and Johnston's motion to reconsider that action was denied.

on their merits preclude an attorney from inviting a default judgment without notice to an opposing attorney where the opposing party has advised the attorney in writing of the representation in the matter. Accordingly, we hold that a default judgment obtained without communication to the defaulted party's attorney must be set aside where it is clear that the party obtaining the default knew of the attorney's representation of the defaulted party in that matter.

## Standard of Review

■ A trial court's refusal to set aside a default judgment is entitled to deference. *Boles v. Weidner*, 449 N.E.2d 288, 290 (Ind. 1983) (citing *Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 340 (Ind.1983)) (trial court's decision reviewed for abuse of discretion); *Gipson v. Gipson*, 629 N.E.2d 952 (Ind.Ct.App.1994) *summ. aff'd* 644 N.E.2d 876 (Ind.1994) (same).

## I. Trial Rule 60(B)(1)

■ A default judgment may be set aside under Trial Rule 60(B)(1) for mistake, surprise or excusable neglect. Under this rule, excusable neglect includes a breakdown in communication that results in a party's failure to appear. Where such a breakdown is established, Rule 60 is met and a default judgment must be set aside. *Whittaker v. Dail*, 584 N.E.2d 1084, 1087 (Ind.1992). Smith argues that the trial court abused its discretion in not setting aside the default judgment because of the breakdown in communication within his office.

Even if we accept the facts as related in the affidavits offered by Smith, they are insufficient to require the trial court to set aside the judgment. Prior to the Johnston suit, the office manager for Smith Surgical Group handled all legal matters. The office manager testified that he would have been the one to receive the summonses and that his usual procedure would have been to contact Smith's attorneys. However, because the Smith Surgical Group was facing financial difficulty, the office manager was in the process of leaving the Group and was not in the office during the time the lawsuit was filed and the trial court entered the default

judgment. Because the office manager was away, the scrub nurse, who did not normally receive mail, placed the summonses on Smith's desk. Smith did not see the summonses until after the default judgment was entered.

This is neglect, but not excusable neglect as the term appears in Rule 60(B)(1). Smith was aware that the person who normally handled legal mail was no longer doing that job. Nonetheless, Smith ignored his mail, including the summonses and motion for default. We do not agree that the failure of Smith to read his mail amounts to a breakdown in communication sufficient to qualify as excusable neglect under Trial Rule 60(B)(1). Smith's case is distinguishable from our previous decisions finding excusable neglect for a breakdown in communication. In those cases the defendants did all that they were required to do but subsequent misunderstandings as to the assignments given to agents of the defendants resulted in the failure to appear. In *Whittaker*, the insurance adjuster believed she had employed an attorney to defend the insured but the attorney thought he was to institute a declaratory judgment against the insured. 584 N.E.2d at 1086; *see also Boles v. Weidner*, 449 N.E.2d 288, 290 (Ind.1983) (breakdown in communication between the independent agent and the insurance agency). Here, Smith knew his mail was unattended and accepted the risk of adverse consequences. The judicial system simply cannot allow its processes to be stymied by simple inattention. There may be cases where a trial court will find excusable neglect based on similar omissions due to external pressures on a sympathetic defendant, but it was not an abuse of the trial court's discretion to refuse to do so here.

## II. Trial Rule 60(B)(3)

■ A default judgment may also be set aside for fraud, misrepresentation or misconduct of an adverse party. Ind. Trial Rule 60(B)(3). Smith argues that Neiswinger's failure to provide a copy of the complaint to Locke Reynolds or otherwise notify them of the lawsuit before moving for default judgment when she had been given clear written advice that they represented Smith in this

matter was misconduct warranting relief from the default judgment.

We agree with Neiswinger that Trial Rule 4 calls for service of the summons and complaint on the party, not the attorney, to secure jurisdiction. We also agree that Trial Rule 5(B) requires service of subsequent papers only on attorneys who have filed their appearance in the case. Trial Rules 4 and 5 anticipate that a defendant in a lawsuit may not have retained an attorney at the time suit is filed. Even if the defendant has a lawyer, the plaintiff may not know that. Accordingly, these Rules do not require notice service on an attorney. But neither provision excludes the possibility that the plaintiff's attorney has knowledge of the defendant's representation. We hold that that knowledge gives rise to a corresponding duty under the Rules of Professional Conduct to provide notice before seeking any relief from the court.

There can be no doubt that Neiswinger was on notice that Locke Reynolds was representing Smith in this matter. Nearly three years after the default judgment was entered, Neiswinger continued to argue before this Court that she had no duty to provide notice to the attorneys who represented Smith in the panel proceeding because the two proceedings were distinct.[4] Yet after the panel proceeding Neiswinger sent a settlement demand to Locke Reynolds. It is obvious that she assumed, consistent with normal practice, that Locke Reynolds continued to represent Smith after panel proceedings ended. Certainly there was no indication to the contrary. This assumption was confirmed in writing by a letter from Locke Reynolds rejecting the settlement demand. Apparently this letter arrived the same day suit was filed. In any event, it confirmed Smith's continued representation by Locke Reynolds after the panel proceedings. Nonetheless, when Neiswinger did not receive a response to the complaint, she did not place a call to the attorneys she knew represented Smith. Neiswinger's conduct is consistent with Trial Rules 4 and 5 but, as explained below, is unacceptable under the Rules of Professional Conduct. To the extent that *Bonaventura v. Leach*, 670 N.E.2d 123 (Ind.Ct.App.1996), can be read to permit this conduct by an attorney, it is disapproved.[5]

Johnston argues that the Rules of Professional Conduct do not impose a duty to provide a copy of the complaint or the motion for default to counsel who have not appeared, and therefore his attorney engaged in no misconduct.[6] "This Court has a particular constitutional responsibility with respect to the supervision of the practice of law." *Fire Ins. Exchange v. Bell by Bell*, 643 N.E.2d 310, 312 (Ind.1994). Accordingly, although this is not a disciplinary proceeding, we look to the Rules of Professional Conduct for guidance in evaluating a lawyer's responsibilities. *See id.*

The Rules are guidelines for lawyers and do not spell out every duty a lawyer owes to clients, the court, other members of the bar and the public. The preamble to the Rules is clear that "[t]he Rules, do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules." Thus lawyers' duties

---

**4.** It may be difficult to identify the outer bounds of the "same matter" but surely it does not turn on the formal distinction between one lawsuit and another or the line between extensive prelitigation negotiations and the filing of suit. Medical malpractice panel proceedings are an example of the later.

**5.** Bonaventure seems inconsistent in principle with *McGee v. Reynolds*, 618 N.E.2d 40 (Ind.Ct. App.1993). The Court of Appeals there held that an attorney's failure to provide a copy of a complaint or answer direct inquiries after lengthy negotiations with defendant's counsel was misconduct sufficient to set aside the default judgment under Trial Rule 60(B)(3). *See id.* at 41.

In this case, Smith's attorneys did not directly inquire as to the status of the suit. Nonetheless, there were extensive dealings between Johnston's attorney and Smith's attorneys during the panel proceedings.

**6.** Smith asserts that Johnston's attorney violated Rule of Professional Conduct 4.2 by communicating with "a person known to be represented by counsel." We do not agree. Serving a complaint is not "communication" with a represented party prohibited by Rule of Professional Conduct 4.2. As Johnston correctly points out, it is required to secure jurisdiction and therefore is "authorized by law" as Rule 4.2 permits.

are found not only in the specific rules of conduct and rules of procedure, but also in courtesy, common sense and the constraints of our judicial system. As an officer of the Court, every lawyer must avoid compromising the integrity of his or her own reputation and that of the legal process itself. These considerations alone demand that Neiswinger take the relatively simple step of placing a phone call to Locke Reynolds before seeking a default judgment.

■ In addition, Rule 8.4(d) explicitly states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. The administration of justice requires that parties and their known lawyers be given notice of a lawsuit prior to seeking a default judgment. A default judgment is appropriate only where a party has not appeared in person or by counsel and, if there is a lawyer known to represent the opposing party in the matter, counsel had made reasonable effort to contact that lawyer.[7]

Neiswinger filed an affidavit in support of the motion for default which stated that no "attorney contacted [her] regarding entering their appearance on behalf of Defendants in the cause since the filing of this cause." Although the letter from Smith's attorneys rejecting settlement did not specifically address their appearance in the suit, it clearly indicated that they still represented Smith's interests in the matter. The representation that Neiswinger had not been contacted by Smith's lawyers "regarding entering their appearance" is literally true. However, it would be easy for a busy trial judge to take this as a statement that Neiswinger had not been contacted *at all* by Smith's attorneys, not that they had contacted her regarding settlement, but not their appearance. This statement may not be a direct misrepresentation, but it certainly creates a potential for misperception on the part of the trial court, and to that extent was also prejudicial to the administration of justice.

Neiswinger argues that she had a duty to her client to seek the default judgment after Smith failed to respond. Whether or not she had duty to file for default as soon as the time limit expired, that duty did not preclude her from notifying Smith's attorneys of the suit at the time of filing or when she moved for default. Any lawyer's duty to advance her client's interest is circumscribed by the bounds of the law and her ethical obligations.

■ Finally, Neiswinger argues that if a claimant's attorney is required to provide notice to defendant's counsel it will "make it nearly impossible to obtain a default judgment health care providers." We hope so. A default judgment against a health care provider or any other party is an extreme remedy and is available only where that party fails to defend or prosecute a suit. It is not a trap to be set by counsel to catch unsuspecting litigants. It may be too strong, as the Court of Appeals put it, to say that Neiswinger's failure to provide notice of the pending lawsuit and motion for default to Locke Reynolds "smack[s] of chicanery and unfair advantage." *McGee v. Reynolds,* 618 N.E.2d 40, 41 (Ind.Ct.App.1993). Nonetheless it is at least unacceptable, and we reject the gaming view of the legal system represented by Neiswinger's prediction.

For these reasons, we conclude that the default judgment was obtained by actions that were prejudicial to the administration of justice and therefore constitute misconduct warranting relief under Trial Rule 60(B)(3).

7. The Seventh Circuit also looks to Rules of Professional Conduct in deciding issues of procedure with similar results. *Grun v. Pneumo Abex Corp.,* 163 F.3d 411 (7th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1496, 143 L.Ed.2d 651 (1999). After both parties failed to appear for trial, the District Court for the Northern District of Illinois dismissed a suit against Pneumo Abex for failure to prosecute. Neither party had notice of the scheduled trial. Although Pneumo Abex's counsel had notice of the dismissal, he chose not to inform opposing counsel of the dismissal after receiving a change of address form. The court stated that it did not condone Pneumo Abex's counsel's decision to remain silent when he admittedly knew that Grun was unaware of the dismissal order and that neither party had received notice of the trial date. Noting that the Rules of Professional Conduct for the Northern District of Illinois prohibit attorneys from conduct prejudicial to the administration of justice, the court concluded that "[r]egardless of whether an explicit rule required Pneumo Abex's counsel to alert Grun's attorney of the dismissal, the spirit of the rules required such a result." *Id.* at 422 n. 9.

### III. Meritorious Defense

In addition to showing sufficient grounds for relief under Trial Rule 60(B), Smith must also make a *prima facie* showing of a meritorious defense. *Whelchel v. Community Hospitals of Indiana, Inc.,* 629 N.E.2d 900 (Ind.Ct.App.1994); *State DNR v. Van Keppel,* 583 N.E.2d 161 (Ind.Ct.App. 1991). In the context of this case, Smith must present evidence that, if credited, demonstrates that a different result would be reached if the case were retried on the merits and that it is unjust to allow the default to stand. *See Whelchel,* 629 N.E.2d at 903; *Chelovich v. Ruff & Silvian Agency,* 551 N.E.2d 890, 892 (Ind.Ct.App.1990). The trial court made no finding or comment with respect to Smith's proffered meritorious defense.

Smith offered the affidavit of a general surgeon, Dr. Larry Micon, in support of his meritorious defense. Micon's affidavit states that Smith's actions were within the standard of care and that none of Smith's decisions about Mrs. Johnston's care were a factor in the damages Johnston seeks to recover. [R. 159–61] This testimony is in direct conflict with the findings of the medical review panel.

A *prima facie* showing is one that "will prevail until contradicted and overcome by other evidence." BLACK'S LAW DICTIONARY 1189 (6th ed.1990). Because, if credited, Micon's testimony would defeat Johnston's claim, Micon's affidavit raises a *prima facie* showing of a meritorious defense. This conclusion is consistent with other decisions finding a sufficient showing of a meritorious defense. *See Whelchel,* 629 N.E.2d at 903 (affidavit stating that bill from plaintiff contained duplicate billing, inappropriate billing and excessive billing was a sufficient showing of a meritorious defense in a suit to collect the bill); *Van Keppel,* 583 N.E.2d at 164 (affirmative defense of absence of a contractual relationship supported by contract that did not, on its face, disclose a contractual relationship, was a sufficient showing of a meritorious defense to action for non-payment of fees); *Sanders v. Kerwin,* 413 N.E.2d 668, 671 (Ind.Ct.App.1980) (allegation that defendant received bill for $350 and paid $75 is a sufficient showing of a meritorious defense to claim for $475).

Micon's testimony also states that Smith's actions were not a factor in the damages Johnston seeks. This conclusion, if credited, would affect the significant damage award of $750,000 that was entered without an opportunity for Smith to be heard on the amount of damages. The medical review panel expressed no opinion as to the appropriate amount of damages. In sum, Smith has provided a *prima facie* showing of a meritorious defense.

### Conclusion

The judgment of the trial court is reversed. This cause is remanded with direction to grant Smith's motion to set aside and for proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.