**DELPHI CORPORATION f/k/a Delphi Automotive Systems Corporation, Appellant–Defendant,**

v.

**Eva ORLIK, Appellee–Plaintiff.**

No. 34A04–0409–CV–510.

Court of Appeals of Indiana.

July 26, 2005.

Rehearing Denied Sept. 21, 2005.

Jane Ann Himsel, Wooden & McLaughlin LLP, Indianapolis, for Appellant.

Michael C. Kendall, Kendall–Hahn, Carmel, for Appellee.

## OPINION

KIRSCH, Chief Judge.

■ Delphi Corporation f/k/a Delphi Automotive Systems Corporation ("Delphi") appeals the trial court's refusal to set aside a default judgment entered against it in favor of Eva Orlik. Specifically, Delphi claims that the trial court abused its discretion when it refused to set aside the default judgment because Delphi had established both excusable neglect and misconduct by the opposing party.[1]

We affirm.

## FACTS AND PROCEDURAL HISTORY

Orlik was hired by Delphi in October 1994 as a financial analyst. As a native of Poland with dual citizenship in Poland and the United States, Orlik felt she was discriminated against because of her national origin while employed at Delphi. On August 24, 1999, Orlik filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). On September 1, 1999, Orlik was terminated by Delphi and, on September 3, 1999, Orlik filed an additional charge of retaliation against Delphi with the EEOC. Orlik obtained her right to sue from the EEOC on March 21, 2000, and timely filed her complaint with the trial court on June 19, 2000.

Delphi is a foreign corporation licensed to do business in Indiana, and its registered agent is C.T. Corporation ("C.T."). The complaint and summons from the trial court were sent by certified mail to C.T.,

---

1. We agree with Orlik that Delphi's "Table of Contents" and "Statement of the Issue" appear to state a single issue on appeal, that the trial court abused its discretion in refusing to set aside default judgment after Delphi demonstrated excusable neglect. However, because Delphi goes on to argue misconduct of the opposing party under T.R. 60(B)(3), it too deserves to be addressed by this court.

which accepted service on Delphi's behalf on June 29, 2000. C.T. recorded receipt of the complaint and summons in its records, but failed to forward it to Delphi. C.T. did not otherwise notify Delphi that it had been sued. The employee who accepted service on behalf of C.T. was later terminated for poor job performance. Orlik's counsel mailed a copy of the complaint to Delphi's in-house counsel, Francis Kuplicki, with a letter notifying him that Delphi had been served through C.T., but it was returned as undeliverable by the post office.

On October 25, 2000, Orlik's counsel faxed a letter to Kuplicki informing him that the trial court had scheduled a status conference regarding the complaint to be held on October 27, 2000. The letter provided the caption of the complaint, its cause number, the name of the court, and the time of the status conference. Kuplicki's secretary called Orlik's counsel the following day and indicated that Delphi was not aware of the proceeding. Kuplicki's secretary then contacted Delphi's Indiana counsel, Jane Ann Himsel, and requested that she represent Delphi in the status conference.

Neither Delphi nor Orlik appeared at the status conference, in person or by telephone. Shortly after the scheduled status conference, Himsel attempted to contact Orlik's counsel by telephone, but was told that he was not available. She then called the trial court and was advised that neither party appeared for the status conference. Himsel indicated to the court that she did not believe that Delphi had been served with the complaint, but did not check whether that belief was correct or request a copy of the complaint. After the status conference, Kuplicki conferred with Himsel on strategy regarding the complaint, which they had not yet seen. They decided to wait to be served with the complaint and not to enter an appearance with the court in the matter.

On April 30, 2001, Orlik filed a motion for default judgment, citing the fact that Delphi had neither appeared nor answered the complaint filed on June 19, 2000. The trial court granted the motion on May 2, 2001. On June 6, 2001, Delphi filed a motion to set aside the default judgment alleging excusable neglect under Ind. Trial Rule 60(B)(1) and misconduct of Orlik's counsel under T.R. 60(B)(3). After a hearing, the trial court denied Delphi's motion to set aside default judgment on September 1, 2004. Delphi now appeals.

## DISCUSSION AND DECISION

■■■ Upon appellate review of a refusal to set aside a default judgment, the trial court's ruling is entitled to deference and will be reviewed for abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Hughes,* 808 N.E.2d 112, 116 (Ind.Ct.App.2004). The trial court's discretion in granting or denying a motion for default judgment is considerable. *Progressive Ins. Co. v. Harger,* 777 N.E.2d 91, 94 (Ind.Ct.App.2002). However, the trial court should use its discretion to do what is "just" in light of the unique facts of each case. *State Farm Mut. Auto. Ins. Co.,* 808 N.E.2d at 116. We will reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Progressive Ins. Co.,* 777 N.E.2d at 94.

■■■ Delphi first argues that the trial court abused its discretion by refusing to set aside its order of default judgment because Delphi was able to establish excusable neglect. T.R. 60(B)(1) provides that a judgment may be set aside for "mistake, surprise, or excusable neglect." *Flying J, Inc. v. Jeter,* 720 N.E.2d 1247, 1249 (Ind.Ct.App.1999) (quoting T.R. 60(B)(1)). There are no fixed standards to

determine the bounds of mistake, surprise, or excusable neglect. *Id.*

Here, Delphi states that a communication breakdown occurred between itself and C.T. regarding service of Orlik's complaint. C.T. accepted service on June 29, 2000, as Delphi's registered agent, but failed to forward the complaint to Delphi. Delphi claims that this prevented it from adequately answering the complaint. However, Delphi became aware of the lawsuit in October of 2000 when it received the notice of a court-ordered status conference from Orlik. Although neither party participated in the status conference, the notice did contain the caption of the complaint, its cause number, and the court in which it was pending. *Appellant's Appendix* at 238. After the status conference, Delphi's attorneys conferred and decided that Delphi had not been served with the complaint and, thus, would not proceed in any way until such service was effected. *Id.* at 350–51. This may be neglect, but it is not excusable neglect. *See Smith v. Johnston*, 711 N.E.2d 1259, 1262 (Ind. 1999).

In *Smith*, our supreme court found that the trial court had not abused its discretion in refusing to set aside a default judgment when the excusable neglect alleged was that the defendant had not opened his mail. The court stated, "The judicial system simply cannot allow its processes to be stymied by simple inattention." *Id.* Here, the course chosen by Kuplicki and Himsel exceeds simple inattention. They conferred and made a conscious decision that Delphi had not been served with the complaint and that they would not act until service was accepted. A call to the trial court, Orlik's counsel, or to Delphi's registered agent, C.T., concerning service of the complaint would have unearthed the fact that Delphi had, in fact, accepted service on June 29, 2000. We cannot say it was an abuse of the trial court's discretion to refuse to find excusable neglect and to set aside the default judgment.

■ Delphi next argues that the trial court abused its discretion in refusing to set aside default judgment under T.R. 60(B)(3), which provides that default judgment may be set aside for fraud, misrepresentation or misconduct of an adverse party. Delphi alleges misconduct by Orlik's counsel, specifically, the failure of Orlik's counsel to notify Delphi's counsel before moving for default judgment. Delphi maintains that *Smith* required Orlik to notify it before moving for default judgment. We disagree.

In *Smith*, the litigation at issue was a continuation of a medical malpractice proceeding before the medical review panel regarding the same parties and issues. After sending a settlement demand to the defendants' attorneys, the plaintiff's attorney filed both a lawsuit and a subsequent motion for default judgment without contacting those same attorneys known to represent the defendant in the medical malpractice proceeding. In support of the motion for default judgment, the plaintiff's attorney further stated in a sworn affidavit that,

> no pleading has been delivered to Plaintiffs or to their counsel by the Defendants or any attorney appearing for Defendants, nor to the knowledge of the undersigned has any attorney entered an appearance since the filing of this cause, nor has any attorney contacted undersigned regarding entering their appearance on behalf of Defendants in this case since the filing of this cause.

*Id.* at 1261. Our supreme court held, "The administration of justice requires that parties and their known lawyers be given notice of a lawsuit prior to seeking a default judgment." *Id.* at 1263. The court further found that the plaintiff's attorney's

affidavit created "a potential for misperception on the part of the trial court, [which] was also prejudicial to the administration of justice" because although she had not been contacted regarding the defendants' attorney's appearance, she had communicated with the defendants' attorneys regarding her demand for settlement. *Id.*

Here, in contrast, Orlik had no way of knowing that Delphi had retained Himsel to represent it in this matter. This was a new case, not a continuation of a previous proceeding involving the same parties, attorneys, and issues, as in *Smith*. After perfecting service on Delphi via C.T., Orlik continued to communicate with Delphi's in-house counsel, Kuplicki, by contacting him regarding the status conference. Himsel and Kuplicki elected not to respond to the lawsuit until they believed that Delphi was served with the complaint. Only after waiting over ten months from the filing of the original complaint and over six months from the date of the status conference without any response from Delphi did Orlik file for default judgment. The length of time waited by counsel before filing for default judgment and the level of communication between Orlik's counsel and Delphi differed from the six week "trap . . . set by counsel to catch unsuspecting litigants" seen in *Smith*. *Id.* The trial court did not abuse its discretion by refusing to set aside default judgment on the grounds of misconduct by opposing counsel. We agree with the trial court that the incorrect assumption by Delphi's counsel that Delphi had not been served by Orlik's complaint was the true cause for the entrance of default judgment against their client.

Affirmed.

BARNES, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I certainly agree that not all neglect is excusable. However, under these circumstances, I must dissent from the majority's determination that the trial court was correct in refusing to set aside the default judgment that had been entered against Delphi.

As our Supreme Court has observed, a trial court's ruling on the denial of a motion to set aside a default judgment is entitled to substantial deference. *Allstate Ins. Co. v. Watson*, 747 N.E.2d 545, 547 (Ind.2001). By the same token, an abuse of discretion may occur where the trial court misapplied the law or its decision is clearly against the logic and effect of the facts and circumstances before it. *Baxter v. State*, 734 N.E.2d 642, 645 (Ind.Ct.App. 2000). Also, default judgments are not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party. *Watson*, 747 N.E.2d at 547. And the preferred policy of this State is that courts should decide a controversy on its merits. *Pitts v. Johnson County*, 491 N.E.2d 1013, 1015 (Ind.Ct. App.1986). That said, the trial court's discretion should be exercised in light of the disfavor in which default judgments are held. *Watson*, 747 N.E.2d at 546. A default judgment is considered an extreme remedy and is available only where a party fails to defend or prosecute a suit. *Id.* And a default judgment should not be a trap to be set by counsel to catch unsuspecting litigants. *Id.*

Pursuant to Indiana Trial Rule 60(B)(1), a default judgment may be set aside in cases of "mistake, surprise or excusable neglect." *Smith v. Johnston*, 711 N.E.2d 1259, 1262 (1999). Instances of excusable neglect include a breakdown in communication that results in a party's failure to appear. *Id.* A breakdown in communica-

tion resulting in a party's failure to answer the complaint creates excusable neglect and a situation in which a default judgment must be set aside. *Id.* Also, a party has the right to rely upon representations of opposing counsel. *Fire Ins. Exch. v. Bell,* 643 N.E.2d 310, 313 (Ind.1994). A default judgment is appropriate only when a party has not appeared in person or by counsel and, if there is a lawyer known to represent the opposing party in the matter, counsel made a reasonable effort to contact that lawyer. *Smith,* 711 N.E.2d at 1264.

Here, the record shows that the communication between Delphi and C.T.—its registered agent—unquestionably broke down. As the majority acknowledges, C.T. had employed—and subsequently fired—Heck, the employee who signed the certified mail receipt for the complaint and summons. The uncontroverted evidence is that Heck failed to comply with C.T.'s normal processes for forwarding these documents to Delphi.

Contrary to the trial court's determination that Delphi engaged in some "tactical" decision not to appear and answer the complaint in October 2000, thus risking a default judgment, there is nothing in the record suggesting that Delphi expected to prevail in this litigation by doing nothing and not answering the complaint. Also, inasmuch as Delphi had appointed C.T. as its agent for service of process, I believe that it reacted appropriately when it learned of the status conference in the case under the belief that it had not been served. Delphi also reasonably retained its belief that it had not been served after Orlik's counsel did not initiate the status conference with the trial court.

Given these circumstances, I am of the view that *State Farm Mut. Auto. Ins. Co. v. Hughes,* 808 N.E.2d 112 (Ind.Ct.App. 2004), should control the outcome here. In *Hughes,* the plaintiffs were involved in an automobile collision and had uninsured motorist coverage through State Farm. The plaintiffs' counsel filed a complaint and, at some point, moved for a default judgment against an uninsured motorist.

Counsel informed State Farm that the lawsuit had been filed, but he did not tell the company about the pending motion for a default judgment. *Id.* at 114. State Farm filed a motion to intervene and told the plaintiffs' counsel of its desire to be kept abreast of further proceedings. While State Farm could have discovered the pending motion for a default judgment against the uninsured motorist by examining the trial court's docket, it did not.

At some point, the trial court scheduled a hearing on the motion to intervene and notified State Farm of the date. It then granted the plaintiffs' motion to continue the hearing. In the ensuing delay, the trial court held a status conference in the matter and entered a default judgment against the uninsured motorist. No one had notified State Farm about the status conference before it had actually taken place. *Id.* at 115.

When State Farm eventually learned of the default judgment, it moved to set it aside so that it could defend its rights under the uninsured motorist policy. The trial court granted State Farm's original motion to intervene, but it denied the motion to set aside the default judgment. We reversed, finding—among other things—that the plaintiffs' counsel was under an obligation to inform State Farm about the lawsuit, as well as the intention to seek a default judgment. *Id.* at 116–17.

In this case, Kendall, the attorney who represented Orlik, did attempt to notify Delphi of the existence of the lawsuit. But in response to Delphi's statement that it knew nothing about the lawsuit, Orlik's counsel first indicated that he had mailed the complaint to Kuplicki but that the envelope containing the complaint had been

returned unopened. Additionally, Orlik's counsel did not place the call for the status conference, and he did not inform Delphi of his intent to move for a default judgment. In essence, there was no additional effort on the part of Orlik's counsel either to notify Delphi that service had been perfected on C.T. or to notify Delphi that he intended to move for the default. Given these circumstances, I am of the view that it was reasonable for Delphi to believe that Orlik's counsel had not yet served Delphi but that he would eventually perfect service. More to the point, Delphi had appointed C.T. as its agent for service of process, and I believe that it reacted appropriately when it learned of a pre-trial conference in a case in which it believed it had not been served. And Delphi reasonably retained its belief that it had not been served after Orlik's counsel did not initiate the pretrial conference call to the trial court.

In sum, I do not believe that Delphi was duty-bound to do more than it already did. Hence, I vote to reverse the denial of Delphi's motion to set aside the default judgment.