File Name: 08a0683n.06

Filed: November 6, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-5353

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

LEXUS REAL ESTATE GROUP, INC., and H.
JAY SNIDER,

     Plaintiffs-Appellees,

v.

BULLITT COUNTY BANK,

     Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____/

Before:     MARTIN and NORRIS, Circuit Judges, and STAMP, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. Lexus Real Estate Group, Inc., and H. Jay Snider, plaintiffs, appeal the district court's grant of summary judgment in favor of Bullitt County Bank, dismissing their claims on res judicata grounds having already been litigated in an Indiana action. We find that res judicata cannot bar these claims in federal court. Accordingly, the district court's decision to grant summary judgment to the Bank on res judicata grounds is REVERSED, and this case is REMANDED for further proceedings.

I.

     At some point prior to 2001, Bullitt County Bank had financed the development of a

---

[*]The Honorable Frederick P. Stamp, Senior District Judge for the Northern District of West Virginia, sitting by designation.

subdivision in Clark County, Indiana by Emerald Development, Inc. The subdivision was then known as Norwestwood. In 2001, Emerald stopped developing the subdivision, which caused the Bank's loan officer, Charles Darst, to investigate. Darst became concerned that Emerald would not be able to repay its loans with the Bank. Darst and Emerald's president and sole owner, John Marshall, agreed that they would both look for a buyer to take over the development.

Eventually, on May 29, 2001, Snider and another partner entered into an option agreement to purchase the subdivision directly from Emerald. Snider and his partner both assigned their option to purchase the subdivision to Lexus Real Estate Group, Inc., on July 21, 2001. Snider was Lexus's president.

That same month, Snider contacted Darst regarding the Bank's possible financing of Lexus's purchase of the property. Darst met with Snider, his partner, and Allan Applegate, Lexus and Snider's attorney. Following the meeting, Applegate provided Darst with updates regarding Lexus's plans for the purchase and development of the subdivision.

On September 25, 2001, Emerald conveyed the subdivision to Lexus by quit claim deed and corporate warranty deed. On the same day, Lexus executed and delivered to the Bank a promissory note in the amount of $543,762 with interest. That note was secured by a mortgage on the subdivision in favor of the Bank and a commercial guaranty agreement signed by Snider individually. Emerald did not receive any cash through the transaction; in effect, Lexus agreed to take over the Bank's original loan to Emerald. According to Lexus, the Bank was able to keep current a development loan that otherwise would have gone into default.

After purchasing the subdivision, Lexus went forward with developing it. Unfortunately,

development costs began to exceed the estimated expenses. According to Lexus this was due to the Bank's misrepresentations regarding the presence of ground rock on the property, which greatly increases the cost of digging basements and causes major septic system problems. Lexus alleges that the Bank assured it that each lot in the subdivision had a septic permit or a soil test for septic-permit approval and that there was no ground rock on the property.

In 2002 the Bank offered additional financing for the development. On July 30, 2002, Lexus executed and delivered to the Bank a second promissory note in the principal amount of $903,108, with interest. This note paid off the outstanding balance on the previous loan, as well as two other loans to Lexus. This second note was secured by another mortgage on the subdivision and a commercial guaranty agreement signed by Snider individually.

According to Lexus and Snider, even more additional funds were needed to continue development of the property due to the gross misrepresentations made by the Bank. The Bank offered additional financing, but on the condition that Snider mortgage his personal residence in order to secure the new loan. On or about December 24, 2002, the Bank extended a line of credit in the principal amount of $228,949.55, with interest, to Snider and his wife. The line of credit was secured by a mortgage on the Snider's personal residence in Shelby County, Kentucky. The line of credit was used to pay off the Sniders' prior mortgage on their residence. Snider also used some of the line of credit to pay $100,000 in overdrafts that Lexus had accumulated on its accounts with the Bank. The line of credit was to come due in only two years. Until that time, the Bank allowed Snider to pay only the interest, and according to Snider, assured him they would allow him to continue paying only the interest after the loan came due, rather then enforcing the balloon payment

requirement.

After securing the mortgage on Snider's personal residence, on April 9, 2003, Lexus executed and delivered a third promissory note to the Bank in the amount of $1,140,000. This note was also secured by a mortgage on the subdivision and a commercial guaranty agreement signed by Snider individually. This note provided Lexus with additional money for development of the subdivision and also paid off the second note.

II.

A.      The Indiana Action

Lexus ultimately defaulted on the final note, and on August 5, 2004, the Bank filed a foreclosure complaint against Lexus and Snider in the Clark Circuit Court in Clark County, Indiana. The Bank named Lexus and Snider as defendants, and sought to recover the amounts due and payable under the final note on the Forest Green property and to enforce the mortgage and the corporate guaranty signed by Snider.

According to the Bank, the Indiana Secretary of State database identified Snider as Lexus's registered agent and listed Lexus's and Snider's address as 6099 North Sprunica Ridge Road, Nashville, Indiana, 47488. The Bank attempted service on both Lexus and Snider at the Nashville, Indiana address; however, both the summonses and complaints were returned unclaimed. Snider points out that the loan documents on which the Bank sued list Snider's and Lexus's correct address in Shelbyville, Kentucky, yet the Bank never attempted service at this location.

Two months after the Bank filed its complaint, Barbara Bison Jacobson faxed the following letter to the Bank's counsel:

> We have been retained to represent Jay Snider in connection with a lawsuit that we understand Bullitt County Bank has filed recently. I need to obtain a copy of the Complaint and any other filings and to discuss the case, including service of process and other related matters. Do you represent the Bank in connection with this lawsuit, or can you refer me to the appropriate attorney?

The day after the above letter was faxed, the Bank's counsel sent by regular mail a courtesy copy of the complaint to Jacobson with a letter stating "I enclose herewith for your reference a copy of the Complaint and summons." The Bank's counsel also stated in the letter that it was his "understanding that [Jacobson] shall file answers on behalf of the two aforesaid defendants. I would like to discuss this matter with you just as soon as possible." Ms. Jacobson never responded to the Bank counsel's letter, and she did not enter an appearance or file an answer on behalf of Snider or Lexus.

Snider and Lexus argue that rather than taking up Jacobson's offer to discuss service of process, on October 26, 2004 the Bank requested that service be made via the Indiana Secretary of State. The Bank listed Lexus's last known address as the Nashville, Indiana address. The Secretary sent the summons by certified email to that address and it was returned undeliverable. The Bank then sought service by publication. Despite Lexus's and Snider's Kentucky mailing address being listed on the loan documents being sued on, in an affidavit the Bank stated that "a diligent search had been made but [Snider] cannot be found in this jurisdiction," and that his "exact whereabouts [were] unknown." The Bank had the summons published in Indiana newspapers on three occasions in November and December, 2004.

On March 2, 2005, the Bank filed an application for default, and on the same day default judgment was entered on behalf of the Bank. On April 15, 2005, the Bank filed a motion for entry of judgment. On June 6, 2005, Indiana attorney John H. Sheen entered an appearance on behalf of

Snider and Lexus, and one day later the Indiana circuit court held a hearing on the Bank's motion for entry of judgment. On June 9, 2005 the court entered a judgment and decree of foreclosure granting the Bank summary judgment against Lexus and Snider in the amount of $1,179,133.53, plus interest, costs, and attorney fees.

On July 22, 2005, Lexus and Snider filed a motion to vacate the default judgment and summary judgment, which was granted on July 26, 2005. The Bank subsequently filed a motion to set aide the court's order granting Lexus and Snider's motion to vacate the default judgment. On August 23, 2005, the court reinstated its default judgment and decree of foreclosure.

Snider and Lexus appealed the court's decision to the Indiana Court of Appeals. That court held that the trial court had not abused its discretion when it reinstated the default judgment and decree of foreclosure. The Indiana Court of Appeals found that because the Bank notified Jacobson two months after it filed suit and nearly five months before it sought a default judgment, the Bank fulfilled its burden to "give notice of the lawsuit prior to seeking a default judgment." *See Smith v. Johnson*, 711 N.E.2d 1259, 1264 (Ind. 1999). While noting that service was not perfect, the court of appeals found that Jacobson's failure to enter an appearance, file an answer, or check the trial court's docket, was enough to hold that the trial court had not abused its discretion in reinstating the default judgment.

The court of appeals, however, did state that the Bank's "unsuccessful attempts to serve [Lexus and Snider] at the Nashville, Indiana address and via publication were inadequate to confer personal jurisdiction over the appellants and afford them due process." The court of appeals went further:

> Quite frankly, we are troubled by [the Bank's] decision not to serve [Lexus and Snider] at the Shelbyville, Kentucky address listed on the loan documents and the loan payoff calculation. [The Bank's] conduct indicates that it was not "desirous of actually informing" [Lexus and Snider] of the lawsuit. We are even more troubled by counsel's misleading representations regarding [the Bank's] knowledge of [Lexus and Snider's] whereabouts and admonish counsel to refrain from similar conduct in future cases.

The Indiana Supreme Court denied a petition to take jurisdiction on March 8, 2007.

B.      The Kentucky Action

While the Indiana action was still pending before the trial court, the Bank rejected Snider's interest payment on the home loan in November, 2005. The loan had come due and no balloon payment was made to pay off the outstanding balance. On February 10, 2005, the Bank filed a foreclosure action in the Kentucky Shelby Circuit Court seeking to enforce the loan given to Snider and secured by a mortgage on his personal residence. Contrary to its assertions that it could not locate Snider and Lexus, the Bank was able to perfect service on Snider's Shelbyville, Kentucky address while the Indiana action was pending. On May 23, 2005, and on June 25, 2005, Snider and his wife filed separate answers, respectively. On July 3, 2006, Snider died and his estate was substituted as a party in the Kentucky state action.

Fourteen months after filing her answer, Snider's wife and Snider's estate filed a motion for leave to assert a counterclaim against the Bank. The Kentucky court denied the motion, holding that it was too late to assert these claims, and because these claims were being litigated in federal court, Snider and his wife could not split causes of action and assert multiple causes of action in different forums based on the same alleged events.

C.      The Federal Action

In December 2005, Snider and Lexus filed the present action in the Western District of Kentucky alleging violation of the anti-tying act and for fraudulent inducement. Over the next year, the Bank engaged in discovery on the merits of Lexus's and Snider's claims. The Bank did not file its motion for summary judgment on res judicata grounds until over a year after the filing of the lawsuit.

While conducting discovery in the federal case, the Bank argued in opposition to Snider's motion to amend his answer to assert counterclaims in the Kentucky state action. Specifically, the Bank argued that the Kentucky court should deny leave to amend because Snider had already filed his claims in federal court. The Kentucky court accepted the Bank's argument and ruled against Snider.

The Kentucky court ruled against Snider on September 25, 2006, and the Bank filed for summary judgment in the federal action on December 22, 2006. The Bank argued that Lexus's and Snider's claims were compulsory counterclaims that were required to have been brought in the Indiana action. But because of the Indiana court's order of default, those counterclaims were now barred. Whether or not the Indiana default judgment barred Lexus's and Snider's claims in federal court was the only issue discussed on summary judgment related to res judicata. Neither party discussed the Kentucky court case in its briefing.

## III.

This Court reviews the district court's grant of summary judgment *de novo*, and "must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007)

(internal quotation marks omitted). "Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment – rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Lexus and Snider argue that because they never received constitutionally sufficient notice in the Indiana foreclosure action, the Indiana court's judgement should not be afforded preclusive effect. The Supreme Court has "recognized that the judicially created doctrine of [res judicata] does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue. Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481-82 (1982) (internal citations and quotation marks omitted). However, "the rules that relate to res judicata to an asserted lack of personal jurisdiction are simple and well settled. If a defendant appears to challenge personal jurisdiction, disposition of the challenge is directly binding as a matter of res judicata." 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4430 (1984); *see also Durfee v. Duke*, 375 U.S. 106, 111 (1963).

Lexus and Snider contend that because process was not validly served on them giving them legal notice of the Indiana action, they were denied due process when the court entered a default judgment against them. The Bank relies on the Indiana Court of Appeals ruling that held that the

trial court did not abuse its discretion in entering a default judgment against Lexus and Snider.

The Indiana Court of Appeals found that because the Bank notified Jacobson two months after it filed suit and nearly five months before it sought a default judgment, the Bank fulfilled its burden to "give notice of the lawsuit prior to seeking a default judgment." *See Smith v. Johnson*, 711 N.E.2d 1259, 1264 (Ind. 1999). While noting that service was not perfect, the court of appeals found that Jacobson's failure to enter an appearance, file an answer, or check the trial court's docket was enough to find that due process had been satisfied and that the trial court had not abused its discretion in reinstating the default judgment

The district court below did not err when it found that it was bound by the Indiana Court's ruling. Lexus and Snider were afforded a fair opportunity to litigate the issue of personal jurisdiction. Regardless of whether the Indiana Court of Appeals was legally correct in its ruling, it directly addressed the issue of personal jurisdiction and the district court is bound by the Indiana Court's decision. *See Durfee*, 375 U.S. at 111. The full faith and credit statute, 28 U.S.C. § 1738, requires that the Indiana Court's ruling be given res judicata effect in the instant action.

In order for res judicata to bar Lexus and Snider's claims in this action, they must have been required to raise them in the Indiana action as compulsory counterclaims. The Indiana Court of Appeals has stated that "[a] compulsory counterclaim may be considered a matter which might have been litigated in the former controversy in which it should have been asserted, so that if the other elements of res judicata are present, . . . the later assertion of the counterclaim is barred." *Middlekamp v. Hanewich*, 364 N.E.2d 1024, 1034 (Ind. Ct. App. 1977).

Trial Rule 13(A) of the Indiana Rules of Procedure defines a compulsory counterclaim as

"any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim . . ." The term "transaction and occurrence" is given a broad interpretation by Indiana Courts in the interests of judicial efficiency and the avoidance of duplicative litigation. *Middlekamp*, 364 N.E.2d at 1035. In order to be logically related, the counterclaim must arise from the same "aggregate of operative facts" as the opposing party's claim. *Estate of McCullough v. McCullough*, 492 N.E.2d 1093, 1096 (Ind. Ct. App. 1986).

The district court found that all of Lexus and Snider's claims in the federal action arose from the same "aggregate of operative facts" as the Indiana action. According to the district court, Lexus and Snider's "claims of fraud, breach of fiduciary duty, and violation of the Anti-Tying Act all arose from the same promissory note and mortgage that were the subject of the [Indiana action]." But this is not what Lexus and Snider allege in their complaint in the federal action. They have alleged that in order to secure additional financing for the Forest Green subdivision, the Snider's were forced to mortgage their personal residence in Kentucky to the bank. Lexus and Snider allege this violates the Anti-Tying Act, and did not arise out of the same "aggregate of operative facts" as the Indiana action, which was a simple foreclosure action on the Forest Green subdivision. Lexus and Snider also brought claims for fraud and breach of fiduciary duty based on the bank's actions with regard to the mortgage loan on the Snider residence in Kentucky and promises to refinance that loan once it came due. These actions were also not part of the same "transaction or occurrence" that gave rise to the Indiana foreclosure action.

As the Indiana Court of Appeals has stated, "the defendant normally has the option of

interposing a claim as a counterclaim or of bring a separate action against the plaintiff. The justification for the existence of such an option is that the defendant should not be required to assert his claim in the forum or the proceeding chose by the plaintiff . . ." *Exchange Bank of Culver v. Teague*, 495 N.E.2d 262, 268 (Ind. Ct. App. 1986) (quoting Restatement 2d, Judgments, § 22, at 185-86). We do not think it can be said that Lexus and Snider's Anti-Tying claim and claims relating to the Kentucky property are compulsory in the Indiana action as they involve additional facts and additional pieces of property separate from the Forest Green subdivision.

Accordingly, because Lexus and Snider's Anti-Tying claim and claims relating to the Kentucky property arise out of additional facts, they were not compulsory counterclaims in the Indiana action.

IV.

Based on the foregoing we AFFIRM the district court's dismissal of Lexus and Snider's claims relating to the Indiana property. However, we REVERSE the district court's dismissal of Lexus and Snider's federal Anti-Tying claim and any claims relating to the Kentucky property. We note that in their amended complaint, Lexus and Snider raise three causes of action: (1) violation of the Anti-Tying Statute, 12 U.S.C. § 1972(1)(A); (2) fraud; and (3) breach of fiduciary duty. While we have held that the Anti-Tying claim remains intact, each additional cause of action seeks damages relating to the Indiana property (and the financing of that property) and the Kentucky property (and the financing of that property).On REMAND, the district court is instructed to identify which claims raised by Lexus and Snider relating to the Kentucky property survive.