**ALLSTATE INSURANCE COMPANY,**
**Appellant–Defendant,**

**v.**

**Gary R. LOVE, Appellee–Plaintiff.**

**No. 32A01–1005–CT–239.**

Court of Appeals of Indiana.

Feb. 22, 2011.

---

Patrick J. Dietrick, Thomas D. Collignon, Michael B. Knight, Collignon & Dietrick, P.C., Indianapolis, IN, Attorneys for Appellant.

John E. Pierce, Plainfield, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Allstate Insurance Company (Allstate), appeals the trial

court's Order refusing to set aside a default judgment entered in favor of Appellee–Plaintiff, Gary R. Love (Love), with respect to Love's Complaint asserting underinsured motorist benefits.

We affirm, in part, reverse, in part, and remand for further proceedings.

## ISSUES

Allstate raises three issues on appeal, which we restate as the following two:

(1) Whether the trial court abused its discretion in refusing to set aside a default judgment; and

(2) Whether the trial court should have held a hearing on damages.

## FACTS AND PROCEDURAL HISTORY

On November 30, 2007, Love's vehicle collided with a vehicle driven by Roland P. Rogers (Rogers). Love sustained multiple and severe injuries to his back, neck, and teeth. After seeking medical and dental treatment, Love's medical and dental bills amounted to $83,010.59. Love retained a counsel, John E. Pierce (Pierce), to represent him in this matter.

At the time of the accident, Rogers was insured by Omni Insurance (Omni) with bodily injury liability limits of $25,000.00 and Love was insured by Allstate with underinsured motorist (UIM) coverage limits of $250,000.00. Subsequently, Omni offered Love $25,000.00, its policy limits, to settle the case. When Allstate learned about the offer, Allstate duly advanced $25,000.00 to Love to preserve its subrogation rights against Rogers and Omni. In addition, Allstate paid $74,189.59 in Love's medical expenses under the medical pay provision of Love's insurance policy. However, Allstate refused to pay Love's dental bills of approximately $9,000.00. After receiving Allstate's advanced $25,000.00, Pierce, Love's counsel, filed an UIM claim against Allstate and demanded

that Allstate make an offer to settle the claim. Allstate did not respond.

Over the course of the proceedings, Pierce regularly communicated with Allstate's claim representatives. Initially, Allstate's representative handling the claim was Mark Carnaghi. When Carnaghi left Allstate, the claim was reassigned to Dianna Best; and then once more to Jeff Wells. At no time did Allstate representatives advise Pierce that Allstate retained a defense counsel for this claim. Nevertheless, on September 5, 2008, Pierce received a call from Patrick J. Dietrick (Dietrick), who informed Pierce that Allstate had contacted him regarding Love's need to install a lift chair in Love's van to make it accessible. Apparently, Love and Allstate disagreed on whether the lift should be covered by the medical pay provision or the underinsured coverage. Pierce and Dietrick discussed applicable case law. On the same day, after their conversation over the phone, Dietrick sent the following email to Pierce:

John:

As discussed this afternoon, I am forwarding to you for your review preliminary research results that I have obtained concerning the Van lift conversion as applicable to Med Pay coverage. As we talked about today, these cases and the section of the Couch treatise are only my preliminary research, but they were the closest authority I could locate to date on the issue as it has been presented to me.

Please contact me after you have had the opportunity to review. I will be more than happy to provide to copies of any other authority I can locate that appears to address this issue.

PJ Dietrick.

(Appellant's App. p. 52). No other communication followed.

On November 23, 2009, Pierce filed a Complaint against Allstate alleging breach of contract for failure to pay UIM benefits. Pierce also sent a courtesy file marked copy of the Complaint, Appearance, and Summons to his Allstate contact, Jeff Wells, on the same day. On November 27, 2009, Jeff Wells forwarded a copy of the Complaint to Allstate's Central Processing Unit in Ohio to assign the case to a defense counsel; yet, Allstate failed to file an appearance before the trial court. On December 24, 2009, Pierce filed a motion for default judgment. On December 28, 2009, the trial court entered the following default judgment:

> The [c]ourt hereby enters judgment against [Allstate,] in the sum of $225,000.00 under the underinsured motorists coverage available to [Love.] The [c]ourt further orders a hearing should be had regarding the amount of additional funds due and owing [Love] under the medical pay provisions of his insurance policy with [Allstate] and sets this hearing for the 8[th] day of [February], 2010[,] at 2:45 [p.m.]

(Appellant's App. p. 40).

Ultimately, Dietrick filed an appearance for Allstate on January 9, 2010. On April 11, 2010, Dietrick filed a motion to set aside the default judgment. On April 26, 2010, the trial court conducted a hearing on Allstate's motion to set aside the default judgment and after careful consideration denied it on April 28, 2010. On May 27, 2010, Dietrick filed an appeal. On May 28, 2010, the court clerk entered a Notice of Completion of Clerk's Record. On June 10, 2010, Dietrick filed a motion to set a hearing on damages, which the trial court denied on June 15, 2010.

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Trial Rule 60(B)(3) Motion

Allstate argues that the trial court abused its discretion in refusing to set aside the default judgment entered against Allstate. Specifically, Allstate contends that Pierce's failure to provide a notice of default judgment to Dietrick constituted misconduct under Ind. Trial Rule 60(B)(3) which mandated the default judgment to be set aside.

 Our standard of review of the denial of a motion to set aside a default judgment pursuant to T.R. 60(B) is limited to determining whether the trial court abused its discretion. *Whelchel v. Community Hospitals*, 629 N.E.2d 900, 902 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* The trial court's decision on a motion to set aside a default judgment is given substantial deference on appeal. *Id.* Therefore, absent an unequivocal abuse of discretion, the trial court's judgment will not be lightly disturbed. *Id.*

Pursuant to T.R. 60(B)(3), a default judgment may be set aside for fraud, misrepresentation, or misconduct of an adverse party. Our supreme court has held that "misconduct" under T.R. 60(B)(3) can be based on a violation of the Code of Professional Responsibility, even if the conduct at issue does not violate the rules of civil procedure. *Smith v. Johnston*, 711 N.E.2d 1259, 1263–64 (Ind.1999).

In *Smith*, a medical malpractice case, the defense counsel represented the doctor during the medical review panel stage but failed to enter appearance and defend the suit after the filing of the civil complaint.

*Id.* at 1261. Although the patient's counsel knew that the doctor had been represented during the panel review phase, she failed to provide notice to the doctor's counsel of her intent to seek a default judgment in the civil proceeding. *Id.* Our supreme court held that "a default judgment obtained without communication to the defaulted party's attorney must be set aside where it is clear that the party obtaining the default knew of the attorney's representation of the defaulted party in that matter." *Id.* at 1262. The court based its holding on the Rules of Professional Conduct and clarified that

> The Rules are guidelines for lawyers and do not spell out every duty a lawyer owes to clients, the court, other members of the bar and the public. The preamble to the Rules is clear that '[t]he Rules, do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules.' Thus lawyers' duties are found not only in the specific rules of conduct and rules of procedure, but also in courtesy, common sense and the constraints of our judicial system. As an officer of the Court, every lawyer must avoid compromising the integrity of his or her own reputation and that of the legal process itself. These considerations alone demand that [the patient's counsel] take the relatively simple step of placing a phone call to [the doctor's counsel] before seeking a default judgment.
>
> In addition, Rule 8.4(d) explicitly states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. The administration of justice requires that parties and their known lawyers be given notice of a lawsuit prior to seeking a default judgment. A default judgment is appropriate only where a party has

not appeared in person or by counsel and, *if there is a lawyer known to represent the opposing party in the matter, counsel had made reasonable effort to contact that lawyer.*

*Id.* at 1263–64 (emphasis added).

■ Here, heavily relying on *Smith*, Allstate argues that because Pierce knew that Dietrick represented Allstate in this case, Pierce had a duty to provide notice to Dietrick before seeking a default judgment. We disagree. This case is not similar to *Smith*. In *Smith*, the patient's counsel clearly knew that the defense counsel represented the doctor. *Id.* at 1261. The two counsels worked together throughout the whole medical review panel proceedings representing respective sides. *Id.* Moreover, the patient's counsel continued to communicate with the defense counsel even after the panel proceedings. *Id.* Here, on the other hand, Pierce had no specific knowledge that Dietrick represented Allstate throughout the entire claim. As the trial court found, Dietrick's involvement in the case was limited to the issue of payment of a lift chair for Love's van. Dietrick made one phone call to Pierce on September 5, 2008, when he informed Pierce that Allstate had contacted him regarding the lift chair conversion of Love's van. Dietrick and Pierce discussed applicable case law. On the same day, Dietrick sent an email to Pierce summarizing their conversation and attaching several precedents. Neither Dietrick nor Pierce made any follow up inquiries after their conversation. That was the only conversation and email exchange between Dietrick and Pierce before Dietrick filed an appearance on January 9, 2010.

Allstate, in turn, also did not advise Pierce that Dietrick would be representing Allstate in this claim. In particular, upon receiving the Complaint, on November 27,

2009, Allstate sent this case to its Central Processing Unit in Ohio. However, despite Allstate's notice of the lawsuit, neither Dietrick nor anyone from the Central Processing Unit timely appeared to represent Allstate before the trial court or informed Pierce of their representation.

As such, we conclude that because Pierce had no clear knowledge that Dietrick represented Allstate throughout the whole claim and because Allstate did not clearly advise Pierce that Allstate retained Dietrick for this claim, Pierce had no duty to provide notice to Dietrick before seeking a default judgment.

 In addition, Allstate argues that it established meritorious defenses to Love's claim. A showing of meritorious defense is required in addition to the showing of sufficient grounds for relief under T.R. (60)(B) to prevail on a motion to set aside a default judgment. *Baxter v. State,* 734 N.E.2d 642, 646 (Ind.Ct.App. 2000). A meritorious defense is one demonstrating that, if the case was retried on the merits, a different result would be reached. *Id.*

██ Specifically, Allstate asserts that (i) Allstate was entitled to contest causation, the nature, and the extent of Love's injuries, (ii) Allstate had subrogation rights and Love had a duty to preserve Allstate's subrogation rights, and (iii) Allstate was entitled to set off the medical payments already made from the UIM benefits awarded by the trial court. All three are good arguments. However, we find that we do not need to discuss these arguments. Even if we were to conclude that these arguments are valid, such finding would not, standing alone, justify the setting aside of the default judgment. Allstate would still fail to establish the main sufficient ground for a relief under T.R. 60(B)(3)—Pierce's alleged misconduct.

Accordingly, we find that the trial court did not abuse its discretion in refusing to set aside the default judgment because Pierce did not commit misconduct when he failed to notify Dietrick before seeking default judgment against Allstate.

## II. *Unliquidated Damages*

Allstate further argues that, even if the trial court did not err in entering a default judgment against it, the trial court erred in awarding $225,000.00 in UIM coverage to Love. Specifically, Allstate contends that it is entitled to a full hearing on these damages because the awarded damages were unliquidated rather than liquidated.

██ Before addressing the unliquidated damages issue, we have to note that Allstate failed to timely raise this issue before the trial court. Specifically, Allstate did not raise the issue of unliquidated damages in either its original motion to set aside the default judgment filed on April 11, 2010, its original brief in support filed with the motion, or during the hearing held on April 26, 2010. Rather, Allstate raised the issue of unliquidated damages for the first time after Allstate filed an appeal and this court had acquired appellate jurisdiction over the case. The appeal was filed on May 27, 2010, and the trial court clerk entered a notice of completion of clerk's record on the following day. Yet, the issue of unliquidated damages was not introduced until June 10, 2010, when Allstate filed a motion to set a hearing on damages. The trial court denied the motion on June 15, 2010. Thus, we agree with Love that Allstate's failure to timely raise the issue of unliquidated damages before the trial court constitutes waiver of the issue on appeal.

██ Notwithstanding the above, Indiana courts prefer to decide cases on their merits and to give the parties their day in court. *Green v. Karol,* 168 Ind.App. 467,

344 N.E.2d 106, 110 (1976). Therefore, we will review the issue of unliquidated damages as if Allstate did raise it in a timely manner.

▮ Here, Allstate's main argument is that UIM damages are unliquidated and therefore can still be contested before the trial court despite the default judgment. We agree.

We find that UIM damages are unliquidated because they are not a sum certain and they cannot be reduced to fixed rules and mathematical precision. *Johnston v. State Farm Mut. Auto. Ins.*, 667 N.E.2d 802, 806 (Ind.Ct.App.1996). A UIM damages award, like any claim in personal injury actions, should depend upon the evidence. *Id.* Further, we find that because the UIM damages in this case are unliquidated, Allstate is entitled to an evidentiary hearing. *Stewart v. Hicks*, 182 Ind.App. 308, 395 N.E.2d 308, 312 (1979). In *Stewart*, the defendant contracted with the plaintiff to transfer a liquor license for either $12,000.00 or $13,000.00 depending on the length of the license. *Id.* at 309, 395 N.E.2d 308. The defendant did not have the rights to the license, so the plaintiff brought an action for declaratory judgment as to its ownership and requested damages. *Id.* at 309–310, 395 N.E.2d 308. The defendant failed to appear. *Id.* at 310, 395 N.E.2d 308. The trial court entered default and awarded $50,000.00 to the plaintiff as he requested. *Id.* The defendant finally appeared and moved the trial court to set aside the default judgment claiming that, among other things, the plaintiff did not provide any evidence in support of his request for damages. *Id.* The trial court held a hearing and granted a relief from the damages portion of the default judgment; the court of appeals affirmed. *Id.* at 313, 395 N.E.2d 308. In affirming the trial court's grant of relief, the court of appeals reasoned that

[c]learly, where the action is for a sum certain and liquidated, the final judgment can be entered and no hearing on damages would be necessary. On the other hand, if the judgment is that the defendant is defaulted and the plaintiff should recover damages but the amount is unliquidated or not otherwise determined, the order is interlocutory and the defaulted defendant may still appear and be heard as to the amount of damages resulting from such an interlocutory judgment.

*Id.* at 312, 395 N.E.2d 308.

Applying *Stewart's* reasoning to this case, we conclude that the trial court's award of $225,000 was interlocutory and therefore Allstate may still appear and be heard as to the amount of damages resulting from the judgment.

### CONCLUSION

Based on the foregoing, we hold that the trial court properly denied Allstate's request to set aside the default judgment entered in favor of Love, but Allstate is entitled to a hearing on the damages award.

Affirmed in part, reversed in part, and remanded for further proceedings.

KIRSCH, J., and BAILEY, J., concur.